**AFFIRMED; Opinion Filed March 18, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01435-CV

**THOMAS J. ELLIS, Appellant**

**V.**

**THE RENAISSANCE ON TURTLE CREEK CONDOMINIUM ASSOCIATION, INC.
AND PREMIER COMMUNITIES MANAGEMENT COMPANY, INC., Appellees**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-10227**

## OPINION

Before Justices FitzGerald, Lang, and Fillmore
Opinion by Justice Lang

Appellant Thomas J. Ellis appeals the trial court's summary judgment against him on a counterclaim by appellee The Renaissance on Turtle Creek Condominium Association, Inc. (the "Association") pertaining to foreclosure of a lien on a condominium unit. In three issues on appeal, Ellis contends the Association was not entitled to (1) summary judgment on its counterclaim for unpaid assessments and fines in the amount of $13,405.64; (2) attorney's fees of $20,000 for services pertaining to the counterclaim, $5,500 respecting the foreclosure, and $30,000 for each unsuccessful appeal; and (3) foreclosure respecting the property described in the judgment. For the reasons below, we decide Ellis's three issues against him. The trial court's judgment is affirmed.

# I. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit was filed by Ellis in August 2010.[1] In his live pleading at the time of the judgment complained of, Ellis (1) asserted he owned "a condominium unit more specifically described as 3225 Turtle Creek Boulevard, Unit 1208, Dallas, Texas, 75219" and (2) contended appellees had filed fraudulent liens pertaining to that property.

Both appellees filed general denial answers. Additionally, on August 30, 2011, the Association filed a counterclaim in which it sought (1) recovery of "delinquent assessments" owed by Ellis, (2) foreclosure of its "continuing lien against Ellis' unit 1208," and (3) "attorney's fees and costs."

In December 2011, (1) appellees filed a no-evidence motion for summary judgment on Ellis's claims and (2) the Association filed a traditional motion for summary judgment on its counterclaim. In the "Introduction" and "Statement of Relevant Facts" in its traditional motion for summary judgment, the Association asserted in part

> The Plaintiff is the owner of Unit 1208, a condominium unit in The Renaissance on Turtle Creek Condominium (the "Condominium") located at 3225 Turtle Creek Boulevard, Dallas, Texas 75219. . . . The Plaintiff is delinquent in paying regular monthly dues assessments and other charges owed to the Association under its condominium declaration and bylaws.
> . . . .
> The bylaws of the Association . . . authorize and direct its board of directors to perform certain duties necessary for the administration of the Association, including but not limited to, establishing the amount of monthly assessments and collecting same from owners; collecting delinquent assessments against any owner and the owner's unit; abating any nuisance; enforcing the terms of the Condominium Declaration; and enforcing the compliance with the rules and regulations adopted by the Association through any means deemed necessary or appropriate, including the use of penalties levied for violations. . . .
> . . . On May 27, 2009, Plaintiff violated the Rules and Regulations by playing loud music in his unit at approximately 8:00 a.m. . . . In the course of a running dispute with his upstairs neighbor, Plaintiff embarked on a campaign of repeated and deliberate violations of the Association's Rules and Regulations by

---

[1] The Association was the sole defendant named in Ellis's original petition. Subsequently, Ellis added appellee Premier Communities Management Company, Inc. as a defendant.

loudly banging on his ceiling. The first "banging" violation, which occurred on or about August 5, 2009, constituted a second violation of the Rules and Regulations, resulting in a fine of $250 in accordance with the Association's fine schedule. Despite receiving a written notice to refrain from future violations, Plaintiff committed a third violation on or about August 31, 2009 by again loudly banging on his ceiling. In accordance with the Association's fine schedule, Plaintiff was fined $500 and was issued another written notice to stop the egregious conduct. During the ensuing ten (10) months, from September 7, 2009 to July 28, 2010, Plaintiff was cited for nine (9) additional violations for loudly banging on his ceiling. In accordance with the Association's fine schedule, Plaintiff was fined $500 for each of these flagrant violations of the Rules and Regulations. . . . Plaintiff violated the Rules and Regulations again on or about April 5, 2010 when he raised his voice in a common area lobby, and used an abusive tone and vulgar language toward the Association's staff. Pursuant to the terms of the fine schedule, Plaintiff was fined $250 for this violation and was duly notified of same.

. . . The Plaintiff refused to pay the above-described fines, totaling $5,500.00.

(citations to record omitted).[2] The Association stated that starting in August 2009, all payments received by Ellis were applied first toward the payment of outstanding fines and other charges in accordance with the Association's payment policy. Thus, although Ellis made monthly payments approximately equal to the monthly dues assessments owed by all unit owners, he became delinquent as to those monthly dues assessments. The Association asserted that as of the end of October 2010, "the Plaintiff's monthly dues assessments account was delinquent in the amount of $6,865.00." Further, the Association contended (1) Ellis "failed and refused to make any payments to the Association" from December 2010 through the date of the motion and currently owed a total of $13,405.64 plus interest; (2) it "has a continuing assessment lien against the Plaintiff's unit 1208" on which it was entitled to foreclosure; and (3) in accordance with the

---

[2] Additionally, in footnote number one in its traditional motion for summary judgment, the Association stated

The Association and its co-defendant have filed a *No-Evidence Motion for Summary Judgment* on all claims raised by the Plaintiff in this lawsuit. Plaintiff's claims are, effectively, nothing more than an illusory defense to payment of the Association's regular monthly dues assessments, dressed up as an affirmative claim for relief, in order to avoid liability for his own actions and a reckoning of his obligations to the Association.

(emphasis original).

"Condominium Declaration" and Texas law, it was entitled to recover reasonable and necessary attorney's fees incurred in connection with its counterclaim.

In the "Argument and Authorities" section of its traditional motion, the Association asserted in part

> As set forth below, the Association is entitled to judgment, as a matter of law, because the pleadings and summary judgment evidence demonstrate there is no genuine issue as to any material fact regarding Plaintiff's ongoing breach of the Association's Condominium Declaration, Bylaws and Rules and Regulations, and his personal liability for the delinquent amounts owed as a result of that breach. . . . Accordingly, the Association is entitled to summary judgment against Plaintiff on its entire Counterclaim for the full amount due and owing, and for foreclosure of its assessment lien against Plaintiff's unit.
> . . . .
> Pursuant to its authority, the Association established regular monthly assessments, adopted the Rules and Regulations regulating the conduct of the owners and governing the use of the Condominium, established a system of fines for violations of the Rules and Regulations, and adopted a Payment Application Policy setting forth the order in which payments from a unit owner will be applied to satisfy charges for which the owner is liable. The Plaintiff is bound by the Association's authority, must abide by the Association's actions taken under such authority, and is personally liable to the Association for the consequences of his actions in contravention of that authority. Therefore, for his repeated breaches of the Condominium Declaration, Bylaws and Rules and Regulations, the Association is entitled to a summary judgment against Plaintiff in the amount of $13,405.64, together with interest at the rate of 18% per annum.

Attached to the Association's traditional motion for summary judgment were affidavits of (1) Duane Bates, general manager of the Association, and (2) John A. Isbell, an attorney hired by the Association.

Bates testified in part in his affidavit (1) "I have personal knowledge of the facts stated herein and they are true and correct" and (2) "As of November 18, 2011, the Plaintiff owes a total of $13,405.64, including delinquent regular monthly assessments, fines, late fees and other charges." Additionally, Bates's testimony included descriptions of noise and conduct violations by Ellis essentially identical to those described in the Association's traditional motion for summary judgment. Further, Bates stated in part in his affidavit

–4–

As the General Manager, I am the custodian of the records for the Association and I am familiar with the documents attached hereto . . . . These records are kept by the Association in the regular course of business. It was the regular course of the Association's business for an employee or a representative of the Association, with personal knowledge of the act, event or condition recorded, to make and preserve the documents attached hereto . . . .

Exhibits attached to Bates's affidavit included, in part (1) a "Condominium Declaration for The Renaissance on Turtle Creek Condominium" (the "Declaration"); (2) "Bylaws of The Renaissance on Turtle Creek Condominium Association, Inc."; (3) "Rules and Regulations of The Renaissance on Turtle Creek Condominium Association, Inc."; (4) resolutions adopting the rules and regulations, a "revised fining structure" and a "payment application policy"; (5) a "resident transaction report" showing an accounting of amounts owed by Ellis to the Association and payments made by Ellis from January 2009 through November 18, 2011; and (6) twelve written notices from Bates to Ellis describing violations committed by Ellis and the fines imposed.[3]

Isbell's testimony in his affidavit included in part (1) assertions that he has been licensed to practice law in Texas continually since November 1987, is a partner in a law firm, and has "personal knowledge of the facts stated herein," and (2) a list of specific tasks that "attorneys and paralegals at my firm, including myself, have done, have caused to be done, or will do . . . in connection with the Association's Counterclaim," including, *inter alia*, "engaged in extensive written discovery." Additionally, Isbell testified in part

---

[3] Specifically, the twelve notices included (1) a May 29, 2009 notice that stated in part "the management office received a complaint of loud music originating in your unit at approximately 8:00 a.m.," "[m]anagement responded to your unit to witness the noise," and "[m]anagement knocked on your door but received no answer"; (2) an August 6, 2009 notice that stated in part "it was witnessed by 3 residents that you were banging on the walls/ceiling"; (3) a September 2, 2009 notice that stated in part "it was reported by 3 residents that you were banging on the ceiling" and "[t]wo associates went to your unit to investigate and witnessed the banging noises coming from your unit"; (4) a September 8, 2009 notice that stated in part "it was reported by 3 residents that you were banging on the ceiling"; (5) a September 28, 2009 notice that stated in part "it was reported by 3 residents that you were banging on the ceiling"; (6) an October 23, 2009 notice that stated in part "it was reported by 2 residents that you were banging on the ceiling"; (7) a March 2, 2010 notice that stated in part "it was reported by 3 residents that you were banging on the ceiling"; (8) a March 8, 2010 notice that stated in part "it was reported by 2 residents that you were banging on the ceiling"; (9) a July 22, 2010 notice that stated in part "it was reported by 3 residents that you were banging on your ceiling to disturb them"; (10) a July 26, 2010 notice that stated in part "it was reported by 4 residents that you were banging on your ceiling to intentionally disturb other units"; (11) a July 29, 2010 notice that stated in part "it was witnessed by 4 resident [sic] that you were banging on your ceiling to cause a disturbance"; and (12) an April 7, 2010 notice that stated in part "it was witnessed by 3 associates and 1 resident that you were in the B Lobby raising your voice and using very abusive tone and vulgar language toward the staff." Bates stated in his affidavit that the notices are "incorporated herein for all purposes."

I have represented clients in cases of this nature, and I have developed a level of specialization in cases of this kind. Based upon my professional experience and my knowledge of the services rendered and the costs and expenses incurred, I am able to form, and have formed, an opinion as to the reasonable fees for performing similar legal services . . . . In my opinion, a reasonable and necessary attorney's fee for the performance of such legal services and of the necessary costs and expenses for the prosecution of the Association's Counterclaim through the conclusion of the summary judgment proceeding is $20,000, based on the expenditure of approximately 73 hours of professional time at my rate of $275 per hour. This amount is segregated from and does not include the extensive attorney's fees incurred by the Association and its co-defendant to defend the suit filed by the Plaintiff. Furthermore, should the Court grant the Association a summary judgment foreclosing its lien against the Plaintiff's unit, in my opinion a reasonable and necessary attorney's fee for assisting the Association with the sale of the unit would be $5,500, based on an estimated expenditure of 20 hours of professional time at my rate of $275 per hour. These reasonable fees are usual and customary for the type of legal services performed in cases of this kind.

Finally, Isbell testified that in his opinion, "a fee of $30,000.00 would be a reasonable fee for the filing of a brief and for each hearing before the Court of Civil Appeals" and "an additional fee of $30,000.00 would be a reasonable fee for the filing of a Petition for Review to the Texas Supreme Court, and for each hearing before said Court."

Ellis filed a response to the Association's traditional motion for summary judgment in which he stated in part

The majority of [the Association's] 1.3" thick Motion appears to be establishing the rights of the Homeowner's Association to charge monthly assessments or to enforce legally adopted Rules & Regulations. Plaintiff does not dispute the general rights of the HOA, but does dispute the rights of the HOA to illegally enact Rules, issue bogus Fines to an owner as a means to harass and intimidate them, and to refuse to allow an owner to pay assessments and then file liens claiming non-payment. . . .
. . . .
[The Association's traditional motion for summary judgment] states that from the end of 2010 to date Plaintiff has <u>refused</u> to pay regular monthly assessments. This statement is known to be false based on the attached documents that show Plainitiff repeatedly attempted to pay legitimate monthly assessments but Defendants refused by ignoring Plaintiff's request for assistance. . . .
. . . .
. . . Defendants issued Plaintiff a fine for allegedly being witnessed banging on the ceiling and disturbing the occupants above. This despite Defendants' own staff explaining to [the Dallas Police Department] (at Defendant's instruction) it was not possible to make such a determination.

(emphasis original).

Attachments to Ellis's response included (1) correspondence from Ellis to the Association in which Ellis informs the Association that a "security breach" recently occurred at his bank, inquires whether the Association's records show certain payments to his account with the Association, and asks the Association to "verify what payments were actually received"; (2) written notices from the Association to Ellis informing him that his account is "currently outstanding due to repeated violation notices" and attempting to collect amounts owed; (3) a November 10, 2010 letter from the Association to Ellis informing Ellis that a check he submitted to the Association "was returned for 'Payment Stopped'" and "[o]nly funds in the form of cashiers check or money order will be accepted at this time"; (4) emails from Ellis to a recipient at "rtchoa.com" complaining of noise coming from the unit above his; (5) incident reports by the Dallas Police Department and the Association's security personnel stating police responded to calls from Ellis in 2009 and 2010 respecting noise in the unit above his and were told by the Association's security personnel on September 1, 2009, that "sound travels through the walls and is almost impossible to locate the source"; and (6) a May 27, 2009 "night manager report" stating that several residents had complained of noise "reportedly created by Mr. Ellis of unit 1208."

Further, Ellis filed two responses to appellees' no-evidence motion for summary judgment. Exhibits attached to those responses included documents titled "Notice of Lien" and "Notice of Assessment Lien Sale" pertaining to real estate owned by Ellis that was described as follows:

> Unit 1208, Building B, of the Renaissance on Turtle Creek Condominium, and its appurtenant, undivided interest in and to the general and limited common elements of The Renaissance on Turtle Creek Condominium, a condominium regime in the City of Dallas, Dallas County, Texas, according to the Map and Condominium Declaration, recorded in Volume 202230, Page 6012, Condominium Records, Dallas County, Texas, as Amended by Amendment to

Condominium Declarations Recorded in Volume 2003169, Page 49, Condominium Records, Dallas County, Texas.

In the final judgment of which Ellis complains, the trial court (1) granted appellees' no-evidence motion for summary judgment and the Association's traditional motion for summary judgment without specifying the grounds for its rulings; (2) ordered that the Association recover $13,405.64 on its counterclaim; (3) awarded the Association attorney's fees of $20,000 for services rendered through the summary judgment, $5,500 for services pertaining to foreclosure of Ellis's unit, $30,000 in the event of an unsuccessful appeal to the court of appeals, and $30,000 if a petition to the supreme court is granted and the appeal to the supreme court is unsuccessful; and (4) ordered that the Association recover post-judgment interest on the sum of $13,405.64 and attorney's fees awarded. Additionally, the trial court stated in the judgment

> The Court further ORDERS that [the Association] have foreclosure of its assessment liens on the following property known as 3225 Turtle Creek Blvd., Unit 1208, Dallas, Texas 75219, and which is more particularly described as:

> > Unit 1208, Building B, of the Renaissance on Turtle Creek Condominium, and its appurtenant, undivided interest in and to the general and limited common elements of The Renaissance on Turtle Creek Condominium, a condominium regime in the City of Dallas, Dallas County, Texas, according to the Map and Condominium Declaration, recorded in Volume 202230, Page 6012, Condominium Records, Dallas County, Texas, as Amended by Amendment to Condominium Declarations Recorded in Volume 2003169, Page 49, Condominium Records, Dallas County, Texas.

(emphasis original).

Ellis filed a "Second Amended Motion to Vacate, Modify, Correct, or Reform Judgment" in which he contended (1) material issues of fact exist "regarding the validity of fines and attempted payment of assessments" and (2) the award of attorney's fees is unreasonable and/or

based on legally insufficient evidence. That motion was denied by the trial court. This appeal timely followed.[4]

## II. THE TRIAL COURT'S TRADITIONAL SUMMARY JUDGMENT

### *A. Standard of Review*

The standard of review in a traditional summary judgment case is well established. *See* TEX. R. CIV. P. 166a(c); *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 49–50 (Tex. App.—Dallas 2006, pet. denied). We review a trial court's decision to grant a traditional summary judgment de novo. *See, e.g., Affordable Motor Co., Inc. v. LNA, LLC*, 351 S.W.3d 515, 519 (Tex. App.—Dallas 2011, pet. denied). The party moving for a traditional summary judgment has the burden to establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003); *see also Affordable Motor Co. Inc.*, 351 S.W.3d at 519 (matter is conclusively established for summary judgment purposes if ordinary minds cannot differ on conclusion to be drawn from evidence). In reviewing a summary judgment, evidence favorable to the non-movant will be taken as true. *Hackberry Creek*, 205 S.W.3d at 50 (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985)). Every reasonable inference in favor of the non-movant is allowed, and all doubts are resolved in its favor. *Id.* Once the movant has established a right to summary

---

[4] Counsel for Ellis filed a "First Amended Brief" in this Court on March 14, 2013, and a reply brief on July 8, 2013. Pending the January 7, 2014 submission of this appeal, Ellis, proceeding pro se after withdrawal of his counsel, filed an October 18, 2013 petition for writ of mandamus in this Court. In his mandamus petition, Ellis contended in part that the judgment in question is "void" as a result of the trial court's alleged refusal to rule on motions filed by him in the trial court respecting "improper notice" of the summary judgment hearing and "withholding of evidence" by the Association. Further, Ellis asserted in part in his mandamus petition that he had no adequate remedy on appeal because the appellate briefing in this case "does not completely reflect the issues under contention." No response to the mandamus petition was requested or filed. This Court denied Ellis's petition for writ of mandamus and subsequent motion for rehearing. *See In re Ellis*, No. 05-13-01443-CV, 2013 WL 6596832, at *1 (Tex. App.—Dallas Dec. 16, 2013, orig. proceeding). On December 17, 2013, three weeks prior to the date set for submission of this case in this Court, Ellis filed a pro se "Motion for Leave to File Amended Brief" in this case. In his motion, Ellis requested that this Court "allow the Appellant to either submit an amended brief or (for the sake of expediency) include and consider all of the content of the Writ of Mandamus and Motion for Rehearing when ruling on the present Appeal." We now deny Ellis's December 17, 2013 motion for leave to file an amended brief. *See Standard Fruit & Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998) (appellate court has discretion whether to allow filing of amended or supplemental brief in interest of justice); *Flack-Batie v. Cimarron*, No. 05-11-00024-CV, 2013 WL 485750, at *2 (Tex. App.—Dallas Feb. 6, 2013, no pet.) (mem. op.) (same).

judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *Id.* (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)). In our review, we cannot consider summary judgment evidence not presented to the trial court. *See Crutcher v. Dallas Indep. Sch. Dist.*, 410 S.W.3d 487, 492 (Tex. App.—Dallas 2013, no pet.); *Hendee v. Dewhurst*, 228 S.W.3d 354, 376 (Tex. App.—Austin 2007, pet. denied) (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996)). When, as here, a summary judgment does not state or specify the grounds upon which it relies, we affirm the judgment if any of the grounds presented in the summary judgment motion are meritorious. *Crutcher*, 410 S.W.3d at 492 (citing *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)).

"A motion for summary judgment must itself expressly present the grounds upon which it is made and must stand or fall on these grounds alone." *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 688 (Tex. App.—Dallas 2000, no pet.) (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993)). "Summary judgment may not be affirmed on appeal on a ground not presented to the trial court in the motion." *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010); *see Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex. 1992). Further, "issues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion." *McConnell*, 858 S.W.2d at 341. With the exception of an attack on the legal sufficiency of the grounds expressly raised by the movant in his motion for summary judgment, issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal. *Id.* at 343; TEX. R. CIV. P. 166a(c); *see also City of Lancaster v. Clopton*, 246 S.W.3d 837, 839 (Tex. App.—Dallas 2008, no pet.) (constitutional issue in avoidance of summary judgment raised for first time in non-

movant's motion to modify or set aside summary judgment in trial court "did not bring the issue before the trial court and will not be considered by this Court").

### B. Analysis [5]

#### 1. Unpaid Assessments and Fines

In his first issue, Ellis asserts the Association is not entitled to summary judgment on its counterclaim for unpaid assessments and fines in the amount $13,405.64 because (1) the Association's traditional motion for summary judgment did not contain "sufficient evidence" to support that counterclaim and (2) the evidence attached to Ellis's response to the traditional motion for summary judgment[6] raised "genuine issues of material facts regarding whether the Association refused to accept his payments and whether the fines imposed against him are reasonable." We address these arguments in turn.

We begin with Ellis's challenge to the sufficiency of the evidence to support the Association's counterclaim. Specifically, Ellis contends (1) "[be]cause the Declaration attached to Duane Bates' affidavit is invalid due to a lack of signature from the property owner, the Association did not present sufficient evidence to show that it has the authority to levy assessments, impose fines, create a lien on property, or foreclose a lien," and (2) because Bates's affidavit "does not show how he has personal knowledge of the alleged excessive noise," the

---

[5] Following submission of this case on appeal, Ellis filed a January 16, 2014 "Notice to the Court" in this case. Therein, Ellis requested that this Court "take note" of an attached document titled "Notice of Objections Regarding Writ of Possession" filed on the same date in a case between Ellis and the Association in Dallas County Court at Law No. 3. Ellis stated he "wish[es] only to make the Court aware of recent events" in the cases between the parties. The Association filed a January 23, 2014 "Motion to Strike or Alternatively, Disregard Appellant's Notice to the Court." The Association stated in part "[t]his extraneous information is not part of the Appellate Record and not pertinent to the issues appealed." We now deny the Association's January 23, 2014 motion. *But see Crutcher*, 410 S.W.3d at 492 (in reviewing trial court's summary judgment, we cannot consider evidence not presented to trial court); *Hendee*, 228 S.W.3d at 376 (same).

[6] The judgment challenged in this appeal is dated September 21, 2012; the notice of appeal is dated October 22, 2012; and the trial court's order denying Ellis's second amended motion to vacate, modify, correct, or reform the judgment is dated October 31, 2012. Additionally, the record shows that on November 2, 2012, Ellis, acting pro se, filed a document titled "Plaintiff's Response to Defendant's Traditional Motion for Summary Judgment" that differs from his response described above. The attachments to Ellis's November 2, 2012 "response" include a document titled "Affidavit of Dr. Thomas J. Ellis" that is not signed or notarized, a copy of the "Rules and Regulations of the Renaissance on Turtle Creek Condominium," a "Notice of Unpaid Assessment Secured by Lien" respecting Ellis's condominium unit, and the correspondence described above from Ellis to the Association requesting that the Association verify "what payments were actually received." The parties do not cite or specifically address this "response" on appeal. We do not consider Ellis's November 2, 2012 "response" or the attachments thereto in our analysis. *See* TEX. R. CIV. P. 166a(c) (except on leave of court, party opposing summary judgment may file opposing affidavits and other written response not later than seven days prior to hearing); *cf. Crutcher*, 410 S.W.3d at 492 (in reviewing trial court's summary judgment, we cannot consider evidence not presented to trial court); *Hendee*, 228 S.W.3d at 376 (same).

–11–

Association's traditional motion for summary judgment "does not contain sufficient evidence to show that the fines were valid."

As to the Declaration attached to Bates's affidavit, the record shows that Declaration is not signed by the property owner. According to Ellis, Bates's statements respecting the Association's powers are therefore "conclusory and without foundation." Further, Ellis asserts that while a "subsequent execution" can "repair" a defect in a declaration in some cases and the property description in the judgment in this case indicates the Declaration was amended at some point, any such amendment cannot constitute a "repair" in this case because "the amended declaration is not included in or referenced by the Association" in its motion for summary judgment.

The Association responds that Ellis's complaint respecting the Declaration is "waived on appeal" because it was not asserted in the trial court. Further, the Association argues (1) "the *evidence* regarding the forming and powers of the Association were not objected to in the trial court" (emphasis original) and (2) Ellis's response to the Association's traditional motion for summary judgment "admits the very thing which he now seeks to deny" (emphasis original) because Ellis states in his response that he "does not dispute the general rights of the HOA."

The record shows Ellis did not raise the lack of signature as to the Declaration or any arguments pertaining to an "amended" Declaration in the trial court. On this record, we conclude Ellis's complaint respecting the Declaration presents nothing for this Court's review. *See All Am. Siding & Windows, Inc. v. Bank of Am., Nat'l Ass'n*, 367 S.W.3d 490, 496 n.2 (Tex. App.—Texarkana 2012, pet. denied) (complaint of lack of signature on copy of agreement in question attached to affidavit as exhibit could not be asserted for first time on appeal).

Next, we address Ellis's complaint that Bates's affidavit "does not show how he has personal knowledge of the alleged excessive noise." According to Ellis,

–12–

Duane Bates' affidavit states that [Ellis] banged on his ceiling or committed other violations of the rules. However, he fails to show in his affidavit that he has any personal knowledge of the acts that are the basis of the fines. He merely shows that he has personal knowledge that the fines were imposed.

The Association argues that [Ellis] was bothering his upstairs neighbor, yet it includes no evidence from the neighbor that she heard any noises or that the noises that she did hear were coming from [Ellis's] unit. The person who would have personal knowledge of the violations did not sign an affidavit or enter any evidence. The only evidence is the affidavit of Duane Bates, which claims personal knowledge but does not show how he has personal knowledge.

Despite Bates' conclusory statement that [Ellis] created excessive noise, the evidence that he uses to support his claim does not show that [Ellis] created excessive noise. Personal knowledge cannot merely be recited in an affidavit; it must be positively shown in order to support a motion for summary judgment. Because Bates did not show support for his conclusory assertion that [Ellis] created excessive noise, his affidavit is insufficient to show that [Ellis] violated any rules.

(citations omitted). In support of that argument, Ellis cites generally to pages four through six of Bates's eight-page affidavit. Those pages contain assertions by Bates that Ellis "violated the Rules and Regulations" as described above and was notified in writing by Bates of each violation.

The Association responds that this complaint presents nothing for this Court's review because an objection regarding an affiant's lack of personal knowledge pertains to "a defect in the form of the affidavit" and is "waived" if not raised in the trial court. Further, the Association contends the undisputed summary judgment evidence, including Bates's affidavit and the attached notices of violations, "established that the Association assessed fines based upon complaints to, and investigations by, the general manager of the Association." Finally, the Association asserts that pursuant to section 202.004(a) of the Texas Property Code, it is entitled to a "presumption of reasonableness" respecting the assessment of the fines in question. *See* TEX. PROP. CODE ANN. § 202.004(a) (West 2007). Specifically, the Association contends "such fines were 'presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary of [sic] authority was arbitrary, capricious, or discriminatory.'"

–13–

Section 202.004(a) provides in part "[a]n exercise of discretionary authority by a property owners' association or other representative designated by an owner of real property concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory." *Id*. However, the record shows no presumption pursuant to section 202.004(a) was raised in the trial court. Therefore, we conclude the Association's argument respecting a "presumption of reasonableness" pursuant to section 202.004(a) presents nothing for this Court's review. *See Malcomson Rd. Util. Dist. v. Newsom*, 171 S.W.3d 257, 279 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (declining to address argument on appeal respecting applicability of statutory presumption in property code pertaining to easements where argument was not raised in summary judgment motion or response); *see also State Farm Lloyds*, 315 S.W.3d at 532 ("Summary judgment may not be affirmed on appeal on a ground not presented to the trial court in the motion."); *Travis*, 830 S.W.2d at 100 (same).

As to Ellis's complaint respecting Bates's "personal knowledge," the record does not show that complaint was raised in the trial court. However, we need not address whether such complaint is precluded on appeal. To the extent that complaint is intended by Ellis to address the entire affidavit and attached exhibits, it lacks specificity and therefore presents nothing for this Court's review. *See French v. French*, 385 S.W.3d 61, 68 (Tex. App.—Waco 2012, pet. denied) (complaint that summary judgment affidavit was conclusory did not specify portions of affidavit to which it pertained and thus presented nothing for appellate review). Alternatively, to the extent Ellis's complaint specifically addresses Bates's "assertion that "[Ellis] created excessive noise" on pages four through six of the affidavit, such assertion constitutes only a portion of the evidence in the record. In addition to that complained of assertion, Bates incorporated by reference the exhibits attached to his affidavit, including twelve notices sent to Ellis respecting

–14–

the violations in question. As described above, those notices state that violations by Ellis were "witnessed" by residents and "associates" and "reported" by residents. Ellis did not object to that evidence in the trial court, nor does he specifically object to that evidence on appeal. Consequently, we conclude Ellis has not met his obligation to show Bates's alleged lack of personal knowledge respecting the complained of assertion on pages four through six of the affidavit is material. *See Choice Asset Mgmt., Inc. v. CIT Tech. Fin. Servs.*, No. 07-12-00304-CV, 2013 WL 5039340, at *1 (Tex. App.—Amarillo Sept. 11, 2013, no pet.) (mem. op.) (concluding appellant's complaints respecting conclusory nature of certain utterances in summary judgment affidavit presented nothing for appellate review where appellant did not establish evidence complained of was material).

Next, we address Ellis's contention that the evidence attached to his response to the traditional motion for summary judgment raised "genuine issues of material facts regarding whether the Association refused to accept his payments and whether the fines imposed against him are reasonable."[7] As to the alleged refusal to accept payment, Ellis asserts "[i]f the Association actually did not accept Thomas Ellis's payments when he tried to pay, then he is not required to pay the debt." According to Ellis,

> The Association claims that Thomas Ellis refused to pay his assessments. The Association claims that Mr. Ellis stopped payment on a check and could only pay in the future with a money order or cashier's check; however, Mr. Ellis claims that his bank account had been canceled due to a security concern, and that the fee that he tried to pay came back.

---

[7] Appellees' brief in this Court includes an assertion in the "Statement of Facts" section that the evidence attached to Ellis's response to the traditional summary judgment motion is "objectionable on numerous evidentiary grounds," including lack of authentication. However, appellees state, this evidence "technically qualifies as a part of the summary judgment record" because they "chose not to object in the trial court." Ellis contends in his reply brief in this Court "Appellees' assertion of fact that Appellant's summary judgment evidence consisted of solely unauthenticated documents does not have support in the record." To the extent appellees' brief in this Court can be construed to assert an objection to the evidence attached to Ellis's response to the traditional summary judgment motion on the ground of lack of authentication, because that objection was not raised in the trial court, we conclude such complaint presents nothing for this Court's review. *See Williams v. Cnty. of Dallas*, 194 S.W.3d 29, 32 (Tex. App.—Dallas 2006, pet. denied); TEX. R. APP. P. 33.1; *see also* TEX. R. APP. P. 38.1(i); 38.2.

(citations to record omitted). In support of those assertions, Ellis cites attachments to his response to the motion for traditional summary judgment, including (1) correspondence from Ellis to the Association in which Ellis informs the Association that a "security breach" recently occurred at his bank, inquires whether the Association's records show certain payments to his account with the Association, and asks the Association to "verify what payments were actually received"; (2) written notices from the Association to Ellis informing him that his account is "currently outstanding due to repeated violation notices" and attempting to collect amounts owed; and (3) a November 10, 2010 letter from the Association to Ellis informing Ellis that a check he submitted to the Association "was returned for 'Payment Stopped'" and "[o]nly funds in the form of cashiers check or money order will be accepted at this time." Additionally, Ellis contends he "attempted to pay his assessments in person," but "the Association did not allow him to do so." In support of that assertion, he cites his response to the traditional motion for summary judgment.

The Association argues (1) Ellis's response to the traditional motion for summary judgment "is not summary judgment evidence" and (2) none of the evidence cited by Ellis raises a fact issue as to whether he "attempted to pay his assessments in person" and was not allowed to do so. Further, the Association contends Ellis's other assertions quoted above, even if proven true, "would not raise a fact issue on refused acceptance" because they "simply reveal[] that Ellis had a problem paying the Association due to issues with his bank."

Ellis's argument in his summary judgment response does not constitute evidence and therefore cannot raise a fact issue. *See Madeksho v. Abraham, Watkins, Nichols & Friend*, 57 S.W.3d 448, 455 (Tex. App.—Houston [14th Dist.] 2001, pet.denied). Further, we cannot agree with Ellis that the evidence described above shows he attempted to make payments that were not accepted by the Association.

As to Ellis's contention that the evidence raised a genuine issue of material fact respecting "whether the fines imposed against him are reasonable," Ellis asserts he (1) argued in his response to the traditional motion for summary judgment that the fines were "bogus" and issued as a "means to harass and intimidate him" and (2) "provided evidence that the Association's own security staff state that it is impossible to tell where noise originates." In support of that argument, Ellis cites his response to the traditional motion for summary judgment and a September 1, 2009 incident report stating police responded to a call from Ellis complaining of noise in the unit above his and were told by the Association's security personnel that "sound travels through the walls and is almost impossible to locate the source."

The Association responds in part

Even taking Ellis' unauthenticated documentation attached to the response as true for these purposes, it can hardly be argued that any of it raises a fact issue regarding the invalidity or unreasonableness of the fines assessed by the Association. At best, these documents support that there were in fact disputes involving Ellis, and that he was fined as a result.

We reconfirm, no fact issue was raised by Ellis's arguments in his summary judgment response. *See Madeksho*, 57 S.W.3d at 455. Further, regardless of whether "sound travels through the walls and is almost impossible to locate the source," the record does not show that as to any of the alleged noise violations in question a determination of who committed the violation was made based solely on sound traveling through the walls. We conclude Ellis has identified no evidence in the record that he did not commit the violations in question or that the fines related to those violations were "unreasonable."

We decide against Ellis on his first issue.

### 2. Attorney's Fees

In general, the party seeking to recover attorney's fees carries the burden of proof. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). Factors to be considered in

determining the reasonableness of attorney's fees include (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). However, evidence of each of the *Arthur Andersen* factors is not required to support an award of attorney's fees. *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 706 (Tex. App.—Dallas 2008, no pet.).[8]

"[T]he affidavit of the attorney representing a claimant constitutes expert testimony that will support an award of attorney's fees in a summary judgment proceeding." *Haden v. David J. Sacks, P.C.*, 332 S.W.3d 503, 513 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Further, the trial court may award attorney's fees as a matter of law "where the testimony of an interested witness is not contradicted by any other witness, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (noting this is "especially true when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so"); *accord Jarvis v. Roncanville Corp.*, 298 S.W.3d 305, 319 (Tex. App.—Dallas 2009, pet. denied); *see* TEX. R. CIV. P. 166a(c) (summary judgment

---

[8] We note that in cases involving the "lodestar method" of determining attorney's fees, an analysis of the legal sufficiency of the evidence to support attorney's fees includes other considerations. *See City of Laredo v. Montano*, 414 S.W.3d 731, 735–36 (Tex. 2013) (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760–62 (Tex. 2012)). However, Ellis does not assert, and the record does not show, that the "lodestar method" was statutorily required in this case or that the Association "chose to prove up attorney's fees using this method." *See id.* at 736.

"may be based on uncontroverted testimonial evidence of interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted").

In his second issue, Ellis challenges the trial court's award of attorney's fees on the grounds that Isbell's affidavit is insufficient (1) to support the Association's claim for "$20,000 in attorney's fees for bringing a counterclaim for foreclosure" because "it is controverted by the record, it contains inconsistencies, and it is incredible, unreasonable, and questionable"; (2) "to support an award of attorney's fees as a matter of law because it is conclusory as to reasonableness without offering sufficient evidence of the *Arthur Anderson* factors"; and (3) "to support an award of attorney's fees as a matter of law because it does not address the qualifications, billing rate, or number of hours worked of the paralegals on the case nor the nature of their work."

The Association responds (1) on appeal, Ellis is limited to attacking the legal sufficiency of the evidence to support the attorney's fees because he failed to preserve any other arguments respecting attorney's fees for this Court's review and (2) "undisputed summary judgment evidence which was neither contradicted nor even attacked in the trial court" supports the Association's claim for reasonable and necessary attorney's fees in the amounts awarded by the trial court.

The record does not show Ellis's challenges respecting attorney's fees were asserted in his response to the traditional motion for summary judgment in the trial court. *See McConnell*, 858 S.W.2d at 343; Tᴇx. R. Cɪv. P. 166a(c). However, to the extent Ellis's arguments can be construed to assert that the evidence in the record is legally insufficient to support the attorney's fees awarded, we consider those challenges. *See McConnell*, 858 S.W.2d at 343.

First, Ellis contends "Isbell's affidavit was contradicted by appellee's own arguments." In support of that contention, Ellis (1) cites assertions in the Association's motion for summary judgment and (2) quotes a statement by this Court in another case that "[i]f the record contains evidence that contradicts or controverts the interested witness's testimony, the affidavit is insufficient to sustain a summary judgment." *Bartz v. Randall*, 396 S.W.3d 647, 651 (Tex. App.—Dallas 2013, no pet.). Ellis does not explain, and the record does not show, how the assertions in the Association's motion for summary judgment cited by Ellis constitute "evidence" that contradicts Isbell's testimony. *See id.*

Additionally, Ellis argues "[t]he record offers circumstances that show that Mr. Isbell's affidavit is unreasonable, incredible, and questionable, and raises a fact issue." Specifically, Ellis asserts in his reply brief in this Court that the Association "argued in the trial court the contradictory positions that: (1) Ellis's claim for filing a fraudulent lien is a defense to the Association's counterclaim; and (2) it was reasonable for an attorney to need 73 hours, segregated from the work done on defense, to bring the counterclaim." Ellis contends "[t]he two causes are either the same thing or they aren't." Further, Ellis asserts (1) the record shows he filed a motion to compel production of discovery against the Association more than four months before the Association filed its counterclaim and (2) "[t]he motion to compel includes requests for production of documents and interrogatories that provide the evidence that the Association uses as evidence in its motion for summary judgment with the exclusion of the affidavit for attorney's fees." Ellis contends Isbell "could not have charged the Association to engage in 'extensive written discovery' 'segregated from . . . [and] not include[ing] the . . . fees incurred by the Association and its co-defendant to defend the suit filed by the Plaintiff,' because discovery requests pertinent to the elements of the Association's counterclaim were exchanged as part of the Association's defense, not part of the counterclaim." According to Ellis, those "contradictory

–20–

assertions" raise a fact issue as to "reasonable attorney's fees." In support of his argument, Ellis cites Isbell's affidavit; footnote number one of the Association's motion for summary judgment; an April 7, 2011 motion to compel filed by Ellis respecting interrogatories and requests for production served by him on the Association; and the Association's responses and objections to Ellis's interrogatories and requests for production.

The Association contends Ellis's argument constitutes an objection to the failure to segregate recoverable attorney's fees from non-recoverable attorney's fees and was waived because it was not raised in the trial court. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) ("if no one objects to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived"). In his reply brief in this Court, Ellis disputes that characterization of his argument. However, even assuming without deciding that Ellis's argument differs from an objection to failure to segregate attorney's fees and can be raised on appeal, we disagree with Ellis's position that "circumstances" in the record preclude a conclusion that Isbell's affidavit constitutes legally sufficient evidence to support the trial court's award of attorney's fees. As described above, the Association stated in footnote number one in its traditional motion for summary judgment that it filed a no-evidence motion for summary judgment on Ellis's fraudulent lien claims against it and that Ellis's claims "are, effectively, nothing more than an illusory defense to payment of the Association's regular monthly dues assessments, dressed up as an affirmative claim for relief, in order to avoid liability for his own actions and a reckoning of his obligations to the Association." On its face, that statement does not constitute an assertion that "the two causes" are the "same thing." *See Bartz*, 396 S.W.3d at 651–52 (concluding circumstances in record did not show contradiction). Further, the record does not show how the fact that the Association responded to Ellis's "discovery requests pertinent to the elements of the Association's counterclaim" as part of "the Association's

–21–

defense" against Ellis's fraudulent lien claims contradicts Isbell's statement in his affidavit that "attorneys and paralegals at my firm, including myself, have done, have caused to be done, or will do" specific tasks, including "extensive written discovery," in connection with the Association's counterclaim. *See id.* On this record, we cannot agree with Ellis that "circumstances" show Isbell's affidavit is "unreasonable, incredible, and questionable."

Second, we consider Ellis's contention that Isbell's affidavit is "conclusory as to reasonableness without offering sufficient evidence of the *Arthur Anderson* factors." "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Thompson*, 127 S.W.3d at 450; *Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). In support of his contention that Isbell's affidavit is "conclusory as to reasonableness," Ellis cites *Burrow v. Arce*, 997 S.W.2d 229, 236 (Tex. 1999). *Burrow* involved affidavits by several attorneys in support of another attorney's motion for summary judgment on misconduct claims filed against him by a former client. *Id.* The attorneys' affidavits were offered to establish as a matter of law that the client did not suffer actual damages and thus the trial court's summary judgment dismissing the client's claims on that basis was proper. *Id.* The supreme court concluded the attorney affiants "have substantial credentials to render expert opinions on issues of attorney practice, but their affidavits . . . offer no basis for the opinions stated" as to whether the client suffered damages as a result of the alleged misconduct. *Id.* at 236–37. *Burrow* did not involve the issue of whether an attorney's affidavit was conclusory or legally insufficient respecting the reasonableness of fees, nor did it involve an analysis respecting the *Arthur Anderson* factors. *See id.* Therefore, *Burrow* is inapposite.

Additionally, Ellis argues in his reply brief in this Court that Isbell (1) failed to adequately address the *Arthur Anderson* factor respecting "the experience, reputation, and ability

of the lawyer or lawyers performing the services" because Isbell "does not state that he spent 73 hours" or "that anyone spent 73 hours," "does not state the $275 is a reasonable hourly rate," and "does not say who is being billed at that rate"; and (2) failed to address certain other *Arthur Anderson* factors. However, evidence of each of the *Arthur Andersen* factors is not required to support an award of attorney's fees. *See Arthur J. Gallagher & Co.*, 270 S.W.3d at 706.

The record shows Isbell testified in his affidavit as to his level of experience, his personal knowledge of the facts stated therein, the type of work he and others performed on the case, and the amount of "reasonable and necessary fees" based upon his hourly rate and the time required. We cannot agree with Ellis that Isbell's affidavit is conclusory. *See Dodd v. Savino*, No. 14–12–00555–CV, 2014 WL 242881, at *13 (Tex. App.—Houston [14th Dist.] Jan. 16, 2014, no pet.) (rejecting argument that attorney's affidavit testimony was conclusory where attorney attested she is duly licensed attorney with personal knowledge of work performed and indicated type of work performed). Further, based on the same testimony of Isbell, we disagree with Ellis that Isbell's affidavit was legally insufficient to support the attorney's fees awarded. *See Tex. Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 518 (Tex. 1999); *Arthur J. Gallagher & Co.*, 270 S.W.3d at 706; *Dodd*, 2014 WL 242881, at *13.

Third, Ellis contends Isbell's affidavit is legally insufficient to support an award of attorney's fees "because it does not address the qualifications, billing rate, or number of hours worked of the paralegals on the case nor the nature of their work." In support of that contention, Ellis cites case law addressing the requirements for recovery of attorney's fees for work performed by legal assistants. Additionally, Ellis asserts "[Isbell] claims that 'attorneys and paralegals at my firm, including myself,' have worked on the case."

However, the record shows Isbell's affidavit contained a list of specific tasks that "attorneys and paralegals at my firm, including myself, have done, have caused to be done, or

will do . . . in connection with the Association's Counterclaim." Further, Isbell's affidavit, on its face, does not show that any of the "reasonable and necessary" fees described by him pertain to work performed by legal assistants. Consequently, we cannot agree with Ellis's position that Isbell's affidavit is legally insufficient due to a failure to address the matters described by Ellis pertaining to paralegals. *Cf.* TEX. R. CIV. P. 166a(c) (summary judgment "may be based on uncontroverted testimonial evidence of interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted").

We decide against Ellis on his second issue.

### 3. Foreclosure

In his third issue, Ellis contends "[t]he Association is not entitled to foreclosure on the property described in the order because it did not describe the property in its motion for summary judgment." Ellis's entire argument as to this issue consists of the following:

> The Association does not include any property description in its motion for summary judgment, yet there is a property description in the order granting summary judgment. The motion for traditional summary judgment does not include the Notices of Lien which it claims to be foreclosing. The order can only grant what the Association requested, and because there is no property description, the Association is not entitled to judgment for foreclosure.

In support of his argument, Ellis cites a single authority, *Westbrook Construction Co., Inc. v. Fidelity National Bank of Dallas*, 813 S.W.2d 752, 754–55 (Tex. App.—Fort Worth 1991, writ denied). In the cited portion of that opinion, the court states that a motion for summary judgment "must stand or fall on the grounds it specifically and expressly sets forth" and "a summary judgment cannot be sustained on a ground not specifically set forth in the motion." *See id*.

The Association responds that Ellis did not raise this argument in the trial court. Further, the Association asserts that, to the extent Ellis is arguing the property is incorrectly described,

–24–

"[h]e could not legitimately do so, for the summary judgment evidence conclusively established that Ellis owned Unit 1208, which is the very unit described in the order granting summary judgment."

In its traditional motion for summary judgment, the Association (1) stated Ellis "is the owner of Unit 1208, a condominium unit in The Renaissance on Turtle Creek Condominium . . . located at 3225 Turtle Creek Boulevard, Dallas, Texas 75219" and (2) sought foreclosure of the Association's "lien against the Plaintiff's unit." The trial court's judgment states in part

> The Court further ORDERS that Defendant The Renaissance on Turtle Creek Condominium Association, Inc. have foreclosure of its assessment liens on the following property known as 3225 Turtle Creek Blvd., Unit 1208, Dallas, Texas 75219, and which is more particularly described as:
>
>> Unit 1208, Building B, of the Renaissance on Turtle Creek Condominium, and its appurtenant, undivided interest in and to the general and limited common elements of The Renaissance on Turtle Creek Condominium, a condominium regime in the City of Dallas, Dallas County, Texas, according to the Map and Condominium Declaration, recorded in Volume 202230, Page 6012, Condominium Records, Dallas County, Texas, as Amended by Amendment to Condominium Declarations Recorded in Volume 2003169, Page 49, Condominium Records, Dallas County, Texas.

(emphasis original).

The record shows the judgment described the property exactly as it was described in the motion for summary judgment and then, additionally, included a more particular description of the same property. On this record, we cannot conclude summary judgment was granted on a ground that was not specifically set forth in the motion. *See id.*

We decide against Ellis on his third issue.

## III. CONCLUSION

We decide Ellis's three issues against him. Additionally, we deny (1) Ellis's December 17, 2013 "Motion for Leave to File Amended Brief" and (2) the Association's January 23, 2014 "Motion to Strike or Alternatively, Disregard Appellant's Notice to the Court."

The trial court's judgment is affirmed.

/ Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

121435F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THOMAS J. ELLIS, Appellant

No. 05-12-01435-CV      V.

THE RENAISSANCE ON TURTLE
CREEK CONDOMINIUM
ASSOCIATION, INC. AND PREMIER
COMMUNITIES MANAGEMENT
COMPANY, INC., Appellees

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-10-10227.
Opinion delivered by Justice Lang. Justices
FitzGerald and Fillmore participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

     It is **ORDERED** that appellees THE RENAISSANCE ON TURTLE CREEK CONDOMINIUM ASSOCIATION, INC. AND PREMIER COMMUNITIES MANAGEMENT COMPANY, INC. recover their costs of this appeal and the full amount of the trial court's judgment from appellant THOMAS J. ELLIS and from any supersedeas bond or cash deposit in lieu of supersedeas bond. After the judgment and all costs have been paid, we **DIRECT** the clerk of the trial court to release the balance, if any, of any cash deposit in lieu of supersedeas bond to the person who made the deposit.

Judgment entered this 18th day of March, 2014.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE