**STATE FARM LLOYDS and Erin Strachan, Petitioners,**

v.

**Wanda M. PAGE, Respondent.**

No. 08–0799.

Supreme Court of Texas.

Argued Nov. 19, 2009.

Decided June 11, 2010.

Rehearing Denied Aug. 20, 2010.

Levon G. Hovnatanian, Christopher W. Martin, Martin Disiere Jefferson & Wisdom LLP, Houston, TX, Sydney Lynn Hewlett, Melinda Ruth Burke, Shannon Gracey Ratliff & Miller LLP, Fort Worth, TX, for Petitioners.

John Foster Melton, Melton & Kumler, L.L.P., Austin, TX, William Allen Kendall Jr., William A. Kendall, P.C., Dallas, TX, for Respondent.

Justice O'NEILL delivered the opinion of the Court.

Once again we are called upon to interpret the Texas Standard Homeowner's Policy–Form B, in this instance to decide whether it affords coverage for mold contamination resulting from plumbing leaks. We hold that when a plumbing leak results in mold contamination, the policy covers mold damage to personal property but not to the dwelling. Accordingly, we reverse the court of appeals' judgment in part, affirm in part, and remand to the trial court for further proceedings.

## I. Background

State Farm Lloyds issued Wanda Page a Texas Standardized Homeowners Policy—Form B ("HO–B") to insure her dwelling and its contents. In June 2001, Page discovered mold and water damage to her home and some of her personal property. She filed a claim with State Farm pursuant to her homeowner's policy. Erin Strachan, a State Farm claims specialist, was assigned Page's claim. At Strachan's behest, a plumber tested Page's plumbing system and discovered leaks in the sanitary sewer lines. Strachan then hired Industrial Hygiene & Safety Technology, Inc. ("IHST") to perform an indoor environmental quality assessment. The assessment revealed a variety of different molds growing in the home. To abate the mold, IHST recommended that Page remediate the structure and some of its contents.

Following IHST's recommendation, Page sought and received an estimate for remediation. In January 2002, State Farm provided Page with drafts in the amount of $12,644 to cover remediation and repair of the structure, and $13,631 to cover personal property remediation and three months of living expenses while the work was performed. In May 2002, Page sought additional funds to repair damage to her carpet, which State Farm refused to pay. A dispute ensued over the amounts

needed to fully remediate and repair the home and its contents.

In September 2004, Page filed suit against State Farm alleging breach of contract, breach of the duty of good faith and fair dealing, fraudulent misrepresentation, and DTPA and Insurance Code violations. She also sued Strachan, alleging violations of the DTPA and the Insurance Code. About a year after the suit was filed, Page provided State Farm with an estimate for remediating her attic, and State Farm sent her $13,042 to cover the cost.

State Farm and Strachan (hereafter collectively "State Farm") filed no-evidence and traditional summary judgment motions, claiming entitlement to judgment as a matter of law on Page's breach of contract claim. State Farm argued that the HO–B policy expressly excludes coverage for all mold damage, there was no evidence that the mold damage resulted from a covered peril, and there was no evidence that Page was owed additional money. Because Page's breach of contract claim was not viable, State Farm contended, summary judgment was proper on her extra-contractual claims as well. The trial court initially denied State Farm's motions. After our decision in *Fiess v. State Farm Lloyds*, 202 S.W.3d 744 (Tex.2006), however, the trial court reconsidered and granted summary judgment in State Farm's favor disposing of Page's mold-related claims. The court of appeals reversed, holding that Page's HO–B policy covered mold damage to the dwelling and its contents. 259 S.W.3d 257. We granted State Farm's petition to consider the extent of coverage Page's HO–B policy affords for mold contamination resulting from plumbing leaks.

## II.  Discussion

When analyzing an insurance contract, we are guided by the well-estab-lished principles of contract construction. *See State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995). Our primary goal is to determine the contracting parties' intent through the policy's written language. *See id.*; *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). We must read all parts of the contract together, giving effect to each word, clause, and sentence, and avoid making any provision within the policy inoperative. *See Beaston*, 907 S.W.2d at 433; *Forbau*, 876 S.W.2d at 133. Our analysis of the policy is confined within the four corners of the policy itself. *See Houston Lighting & Power Co. v. Tenn—Tex Alloy & Chem. Corp.*, 400 S.W.2d 296, 300 (Tex.1966). Whether a particular provision or the interaction among multiple provisions creates an ambiguity is a question of law. *See Nat'l Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex.1995). The fact that the parties may disagree about the policy's meaning does not create an ambiguity. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex.1998). Only if the policy is subject to two or more reasonable interpretations may it be considered ambiguous. *See id.* With these principles in mind, we turn to the policy language in issue.

## A.  The Policy

The standard HO–B policy before us separately provides coverage for the dwelling (Coverage A) and its contents (Coverage B). Specifically, the policy provides:

**SECTION I—PERILS INSURED AGAINST**

**COVERAGE A (DWELLING)**

We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling) unless the loss is excluded in Section I Exclusions.

**COVERAGE B (PERSONAL PROPERTY)**

We insure against physical loss to the property described in Section I Property Coverage, Coverage B (Personal Coverage) caused by a peril listed below, unless the loss is excluded in Section I Exclusions.

\*    \*    \*

9. **Accidental Discharge, Leaking or Overflow of Water or Steam** from within a plumbing, heating or air conditioning system or household appliance.

   A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.

   *Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril.*

\*    \*    \*

(Bold in original, italics added). The last sentence excepting Exclusions 1.a. through 1.h. from the Section I Exclusions is commonly known as the "exclusion repeal provision."

Under Coverage A, the dwelling is insured against "all risks" except those excluded in Section I Exclusions. Under Coverage B, on the other hand, personal property is only insured against twelve enumerated perils, plumbing leaks being one. As with Coverage A, Coverage B is limited by the exclusions listed in Section I Exclusions. Those exclusions are as follows:

**SECTION I   EXCLUSIONS**

1. The following exclusions apply to loss to property described under Coverage A (Dwelling) or Coverage B (Personal Property). . . .

\*    \*    \*

f. We do not cover loss caused by:

   . . .

   (2) rust, rot, mold or other fungi.

   . . .

   We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

\*    \*    \*

In interpreting the foregoing provisions, the parties before us start at different points. State Farm begins with our decision in *Fiess*, contending we unequivocally construed the same policy there to exclude all mold damage to a dwelling irrespective of its cause. Page responds that our holding in *Fiess* only concerned mold from roof and window leaks, not mold damage caused by plumbing leaks, and points to our holding in *Balandran v. Safeco Insurance Company*, 972 S.W.2d 738 (Tex.1998), as controlling. As Page reads *Balandran*, the mold exclusion and the exclusion repeal provision, when read together, expressly cover mold damage caused by plumbing leaks or at the very least create an ambiguity, affording coverage under the policy in either event. Although we agree with State Farm that Page's policy does not afford coverage for mold damage to her dwelling, neither *Balandran* nor *Fiess* is directly on point.

### B.  *Fiess*

In *Fiess*, Tropical Storm Allison caused flood damage to the Fiesses' home. 202 S.W.3d 744. An inspection revealed that the flooding had caused some mold contamination, but the bulk of the mold was caused by roof leaks, plumbing leaks, leaks

in the HVAC system, exterior door leaks, and window leaks, all of which had occurred before the storm. *Id.* In the course of the ensuing litigation over the scope of the Fiesses' mold coverage, the United States Court of Appeals for the Fifth Circuit certified to us the question whether the ensuing-loss provision in part 1.f of the HO–B policy's Section I–Exclusions provided coverage for mold contamination caused by water damage that is otherwise covered under the policy. *Id.* at 745–46. Concluding there was no ambiguity in the policy language, we answered that it did not. First, we reasoned that the ensuing-loss provision reinstates coverage only as to "losses caused by an intervening cause (like water damage) that in turn follow from an exclusion listed in paragraph 1(f)." *Id.* at 749 (citing *Lambros v. Standard Fire Ins. Co.*, 530 S.W.2d 138 (Tex.Civ. App.-San Antonio 1975, writ. ref'd)). In other words, the water damage must be the *result*, not the cause, of the types of damage that the coverage exclusions enumerate. *Id.* We also reasoned that the ensuing loss must be caused by water *damage*, not merely water, else the insurance policy would become a maintenance agreement. *Id.* at 750. We thus concluded that the ensuing-loss clause did not reinstate coverage for otherwise excluded mold damage.

While our decision in *Fiess* was unquestionably broad, we cannot say that it unequivocally vitiated coverage for all mold damage no matter the cause, as State Farm claims. We specifically noted that the Fiesses "failed to preserve a claim for mold caused by air-conditioning and plumbing leaks." *Id.* at 750 n. 26. And we expressly declined to address personal property coverage for mold damage that resulted from plumbing leaks because the Fiesses failed to appeal that issue. *Id.* at 746 n. 3. Nevertheless, our policy interpretation in *Fiess* is more consistent with

State Farm's position today than with Page's reading of the policy language. *See Carrizales v. State Farm Lloyds*, 518 F.3d 343, 348 (5th Cir.2008).

## C. *Balandran*

Page contends our decision in *Balandran* controls interpretation of her HO–B policy, and the court of appeals agreed. There, the Balandrans sued to recover damage to their dwelling caused by foundation movement resulting from an underground plumbing leak. 972 S.W.2d at 739. We examined exclusion 1.h concerning foundation damage in light of the exclusion repeal provision. *Id.* For two reasons, we concluded that the policy's language and structure were subject to different, but reasonable, interpretations and thus created an ambiguity. *Id.* at 741. First, we noted that the repeal of exclusion 1.h expressly applied to "loss" caused by a plumbing leak, and was not by its terms limited to "personal property loss." *Id.* That the repeal provision is contained in Coverage B, we said, did not necessarily limit its application to Coverage B, as the provision could have been placed where it was "simply because that is the only place in the policy that the 'accidental discharge' risk is specifically described." *Id.* Second, we determined that the insurer's construction of the policy would render part of the policy language meaningless. *Id.* If the repeal provision applied only to personal property under Coverage B, exclusion 1.h would mean nothing as that exclusion, on its face, only applies to damage to the dwelling under Coverage A. *Id.* Finally, we noted the reasonableness of the Balandrans' interpretation in light of the circumstances surrounding the policy's drafting, which indicated that placement of the exclusion repeal provision in Coverage B was intended merely to simplify the policy and not to restrict then-available coverage for

foundation damage resulting from a plumbing leak. *Id.* at 742. Concluding that both the insurer's and the insured's interpretation of the policy language were reasonable, we held that the policy was ambiguous. *Id.* Because the ambiguity involved an exclusionary provision of an insurance policy, we adopted the construction urged by the Balandrans and held that the policy provided coverage for the damage to their foundation. *Id.* at 742.

The court of appeals, broadly applying *Balandran* to this case, held that the entire exclusion repeal provision is ambiguous even though our *Balandran* analysis was confined to the foundation damage exclusion contained in 1.h. 259 S.W.3d at 263. Page contends the court of appeals' sweeping application was proper because our analysis was based, at least in part, upon the repeal provision's reference to "loss" rather than "personal property loss," and on the drafters' intent that there be no substantive change in coverage under the redrafted policy. As to the latter point, our decision in *Fiess* made clear that an ambiguity may not be created by extrinsic evidence concerning the prior HO–B policy. 202 S.W.3d at 747. Moreover, there is nothing to indicate that the prior version of the policy unambiguously covered mold damage resulting from plumbing leaks as it did for foundation damage. *Balandran*, 972 S.W.2d at 742. As to the former point, that the exclusion repeal provision expressly applies to "loss" caused by a plumbing leak and is not by its terms limited to "personal property loss," we are not persuaded that this policy wording, in isolation, can bear the weight of rendering the entire repeal provision ambiguous. Instead, we must examine the policy language in light of the particular policy exclusion in issue, reading all parts of the policy together and "giving meaning to every sentence, clause, and word to avoid rendering any portion inoperative." *Fiess*,

202 S.W.3d at 748 (citing *Balandran*, 972 S.W.2d at 741; *Liberty Mut. Ins. Co. v. Am. Emp. Ins. Co.*, 556 S.W.2d 242, 245 (Tex.1977); *Pan Am. Life Ins. Co. v. Andrews*, 161 Tex. 391, 340 S.W.2d 787, 790 (1960)).

## D. Mold Damage to the Dwelling

■ In *Balandran*, we held that the exclusion repeal provision was ambiguous with respect to exclusion 1.h because the exclusion for foundation damage was specifically limited to Coverage A. In other words, because the losses excluded under 1.h—losses caused by "settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools"—applied only to the dwelling under Coverage A, to hold that repeal of the 1.h exclusion only applied to personal property under Coverage B would make no sense. *Balandran*, 972 S.W.2d at 741. That is not the case with the 1.f mold exclusion, because the exclusion's plain language stating that it applies to property loss under Coverage A (Dwelling) and Coverage B (Personal Property) can be given full effect. To hold that the exclusion repeal provision reinstates coverage for mold damage under both Coverage A and Coverage B would render the mold exclusion entirely nugatory. On the other hand, limiting the 1.f repeal provision to coverage B where it appears in the policy does not render the repeal provision wholly inoperative as it did in *Balandran*.

Our interpretation of Page's policy comports with the Fifth Circuit Court of Appeals' reasoning in *Carrizales v. State Farm Lloyds*, 518 F.3d at 348. There, the Carrizaleses sued State Farm contending their homeowners' policy—the same policy at issue here—provided coverage for mold contamination in their garage caused by

plumbing leaks. *Id.* at 344. Making an *Erie*-guess about how we would decide the question now before us, *id.* at 345 (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 406 (5th Cir.2004)), the Fifth Circuit concluded that the interaction between the mold exclusion provision and the exclusion repeal provision under Coverage B did not create an ambiguity. *Id.* at 346. Although the repeal provision is located in the section of the policy that deals with plumbing leaks, the court said, "it does not follow that every exclusion is repealed with respect to plumbing leaks." *Id.* at 348. Looking at each policy provision and determining its effect in light of the repeal provision, the court concluded: "we cannot envision the role the mold exclusion would play if Coverage A (implicitly) as well as Coverage B (explicitly) covered mold damage resulting from plumbing leaks." *Id.* Neither can we. There is no reason apparent from the policy language that would indicate the exclusion repeal provision applies to the mold exclusion under Coverage A; to construe the repeal provision to reinstate mold coverage for Page's dwelling would wholly ignore the structure of the policy. *See id.* at 352 (Reavley, J., concurring).

### E. Mold Damage to Personal Property

While the exclusion repeal provision does not reinstate coverage for mold damage to the dwelling under Coverage A, it does apply to remove personal property damage from the 1.f mold exclusion, as the court of appeals held.[1] 259 S.W.3d at 264. As the Fifth Circuit in *Carrizales* reasoned with respect to Section 9's coverage of personal property loss caused by plumbing leaks, "[its] operation on exclusion 1(f) gives effect precisely to what its location in the text of Form B implies: Mold damage to personal property caused by accidental discharge is covered." 518 F.3d at 347. We agree. Section 9's unambiguous language states that "[e]xclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril." "This peril" refers to plumbing leaks which affect the insured's personal property. Accordingly, Page's claims for mold damage to her personal property resulting from plumbing leaks are covered under the HO–B policy.

### F. State Farm's Summary Judgment Points

■ State Farm moved for summary judgment on both traditional and no-evidence grounds. Arguing in its traditional summary judgment motion that Page's HO–B policy affords no coverage for mold damage to her home or its contents, State Farm argued alternatively that Page had presented no evidence that a covered peril caused the mold contamination or that State Farm owed more than it had already paid under the policy. State Farm reurges those same grounds here with respect to Page's personal property, and contends the court of appeals made a number of errors in reviewing the evidence Page presented to defeat State Farm's no-evidence motion. Because the trial court's summary judgment was sustainable on no-evidence grounds, State Farm contends, the court of appeals erred in reversing it. We need not address State Farm's challenges to the evidence the court of appeals considered, however, because State Farm's no-evidence points were not properly preserved.

■ The trial court originally denied both State Farm's traditional and no-evi-

---

1. State Farm argued against coverage for personal property damage in the court of appeals, but apparently has since abandoned that argument in this Court.

dence summary judgment motions. After our decision in *Fiess*, State Farm filed a motion requesting that the trial court reconsider its ruling. State Farm argued that our decision in *Fiess* clearly disposed of Page's claims because the HO–B policy does not cover mold damage to either the dwelling or its contents caused by a plumbing leak. State Farm's motion for reconsideration did not reurge its no-evidence challenge, as Page pointed out in her objection to the motion[2] and throughout her appeal. Summary judgment may not be affirmed on appeal on a ground not presented to the trial court in the motion. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993). Because State Farm's motion for reconsideration was limited to the coverage issue, the points pertaining to State Farm's no-evidence motion were not properly before the court of appeals and we do not address them.

### G. Page's Extra-contractual Claims

In addition to her breach of contract claims, Page also brought extra-contractual claims against State Farm and Strachan. When the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive. *See Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921 (Tex.2005) (per curiam). There can be no liability under either Article 21.55 or Article 21.21 of the Insurance Code[3] if there is no coverage under the policy. Similarly, to the extent the policy affords coverage, extra-contractual claims remain viable. Accordingly, to the extent Page's extra-contractual claims are based on State Farm's denial of coverage for mold damage to her dwelling, they cannot survive. To the extent Page's extra-contractual claims are based upon denial of her claim for mold damage to the contents of her home, we remand them to the trial court for further proceedings.

### H. Strachan's Remaining Points

Strachan further contends the court of appeals erred in reversing the trial court's summary judgment in her favor because (1) Page's summary judgment response did not preserve error as to Strachan, (2) Page's appellate brief did not properly assign error as to her, and (3) Page's "general point of error" is insufficiently specific to preserve her argument that the trial court erred in granting Strachan summary judgment. In rejecting these arguments, the court of appeals concluded that Page had sufficiently challenged the trial court's summary judgment in Strachan's favor in both her summary judgment response and her appellate briefing. 259 S.W.3d at 271–72. We agree with the court of appeals and reject Strachan's remaining points.

2. Page's response to State Farm's motion to reconsider stated:

As Defendants' Motion for Reconsideration appears to only address *Fiess v. State Farm Lloyds* (see below) ruling and its effect on coverage afforded Ms. Page under her HOB policy with State Farm, Plaintiff's response will address this issue.

3. Page filed suit against State Farm and Strachan in 2004. At that time, Article 21.21 and Article 21.55 of the Insurance Code were in effect. Each has since been repealed and recodified. Article 21.21 was repealed in 2003, effective March 31, 2005. Act of May 10, 2001, 77th Leg., R.S., ch. 290, § 1, 2001 Tex. Gen. Laws 548, *repealed by* Act of May 20, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 4138. It was recodified under sections 551.001–.454 and section 543.001 of the Insurance Code. Similarly, Article 21.55 was repealed in 2003, effective March 31, 2005. Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 11.03(a), 1991 Tex. Gen. Laws 1045, *repealed by* Act of May 20, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 4138. It was recodified under sections 542.051–.061 of the Insurance Code.

### III. Conclusion

For the foregoing reasons, we reverse the court of appeals' judgment in part, affirm in part, and remand to the trial court for further proceedings.