# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00350-CV

**3109 Props, L.L.C.; Detour, Inc.; and Richard Linklater, Appellants**

**v.**

**Truck Insurance Exchange, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-12-001093, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

3109 Props, L.L.C., Detour, Inc., and Richard Linklater appeal the trial court's summary judgment in favor of Truck Insurance Exchange (TIE) on their claims for breach of contract, unfair insurance practices, and violation of the prompt payment statute. *See* Tex. Ins. Code § 542.058(a). We will affirm the trial court's judgment.

## BACKGROUND

3109 Props and Linklater, a filmmaker, were the named insureds on a commercial property insurance policy issued by TIE.[1] The policy period was from July 17, 2011 to July 17, 2012. On September 4, 2011, a building owned by Linklater located at 171 Cardinal Drive in Paige,

---

[1] TIE challenged Detour, Inc.'s standing to bring any claims against it on the ground that it was not a named insured under the policy. Because we are affirming the summary judgment in favor of TIE on all claims asserted against it, we need not address this issue.

Texas, was destroyed in the Bastrop County Complex Wildfire, a 32,000-acre inferno that destroyed over 1,600 homes and killed two people. Stored in the building and also destroyed in the fire was Linklater's archive of materials from his various film projects. The archive had been appraised and was estimated to be worth at least $500,000. According to Linklater, the archive had been stored at 171 Cardinal Drive since at least 2010 in a building erected for that purpose and owned by Linklater.

Linklater made a claim under the commercial property insurance policy, which TIE denied. TIE stated that its reason for denying the claim was that the policy did not cover Linklater's business personal property if it was in a location Linklater owned that was not a "described location" in the policy and that the archive did not qualify for coverage under the policy's "Coverage Extensions" provision. 3109 Props, Linklater, and Detour then filed suit against TIE in Travis County district court asserting causes of action for breach of contract, unfair insurance practices, and prompt payment violations.

After the parties agreed to certain stipulated facts, 3109 Props, Linklater, and Detour filed a motion for partial summary judgment to establish coverage for the lost archive and to establish TIE's liability for breach of contract and for violation of the prompt payment claims statute. TIE filed a cross-motion for summary judgment on all three claims on the ground that, as a matter of law, the archive was not covered because it was not at a location for which the policy provided coverage for Linklater's business personal property. The trial court concluded that the archive was not insured under the policy and granted TIE's motion for summary judgment. This appeal followed. In four issues, 3109 Props, Linklater, and Detour argue that the trial court erred by granting summary judgment in TIE's favor because, properly construed, the commercial property insurance policy covers their claim.

***Standard of Review***

We review the trial court's summary judgment de novo. *Ferguson v. Building Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam). When reviewing cross-motions for summary judgment, we consider all the summary judgment evidence, determine all issues presented, and render the judgment the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

When interpreting an insurance policy, courts apply the general rules of contract construction to ascertain the parties' intent as expressed in the contract. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). We begin our analysis with the language of the policy because "we presume parties intend what the words of their contract say." *Id.* We consider the entire contract and seek to harmonize and give effect to all provisions so that none will be rendered meaningless. *See MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). The policy's terms are given their ordinary and generally accepted meaning unless the policy shows the words were meant in a technical or different sense. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008).

Whether an insurance contract is ambiguous is a question of law. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010). If a policy provision has only one reasonable interpretation, it is unambiguous and we must construe it as a matter of law. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006). If the contract is susceptible of more than one reasonable interpretation, it is ambiguous. *Page*, 315 S.W.3d at 527. The fact that the parties may disagree about the policy's meaning does not create an ambiguity. *See Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998).

3

*Was the archive at a location covered by the policy?*

In their first three issues, appellants contend that summary judgment in TIE's favor was error because the commercial property insurance policy has no geographic limitation and therefore covered Linklater's business personal property no matter where in the United States it was located or, in the alternative, the policy is ambiguous and should be construed in favor of coverage. The archive was in a building located at 171 Cardinal Drive in Paige, Texas. TIE argued that because this location was not listed as an insured location under the policy, the archive does not constitute covered business personal property.[2] TIE maintains that the provisions of the policy's "Building and Personal Property Coverage Form," as modified by the "Premier Extension Endorsement," limit business personal property coverage to property at two specific locations—1901 East 51st Street and 3109 North Interstate Highway 35. The coverage form, as modified by the endorsement, provided in pertinent part:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

**A.     Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1.     Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this Section, **A.1.**, as limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

---

[2]  The parties do not dispute that the archive meets the policy's definition of "business personal property" but join issue on whether it is *covered* business personal property.

4

. . .

**b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property Separation of Coverage form:

. . .

(5) All other personal property owned by you and used in your business;

The policy has a "Texas Common Policy Declarations Page" that lists the types of coverage provided along with the amount of the insurance premium for each type of coverage. The coverage types for which premiums are listed are "Commercial Property Coverage," "Commercial General Liability Coverage," and "Commercial Auto Coverage." This form includes a line for "Location of Premises," which was left blank. A separate page of the policy titled "Texas Commercial Property Renewal Certificate" includes a box titled "Description of Premises." The premises described in that box are 1901 E 51st Street, Austin, Texas. The stated limits of insurance for property at that location are $59,600 for the building and $239,000 for business personal property. The policy also includes a page titled "Commercial Property Supplemental Declarations" for which the "Description of Premises" is 3109 N IH 35, Austin, Texas. The stated limits of insurance for property at that location are $992,900 for the building and $100,000 for "Bus Inc and E.E. O/T Rental."[3] Read together, these pages of the policy indicate that it provides coverage for business personal property located at 1901 E 51st Street, Austin, Texas. No part of the policy identifies 171 Cardinal Drive, Paige, Texas, as a location covered by any of the commercial property policy provisions.

---

[3] Nothing in the record or the parties' briefing explains what type of loss this covers, but neither party contends that it provides coverage for business personal property such as the archive.

5

Linklater contends, however, that the commercial property policy does not have any geographic limitations. Relying on two cases from other Texas courts of appeals, Linklater maintains that because the "Location of Premises" portion of the "Texas Common Policy Declarations Page" was left blank, TIE has waived any geographic restrictions to coverage.[4] Linklater's position requires that we look only at one page of the policy and ignore the other parts of the policy, including the page titled "Supplemental Declarations," that identify specific covered locations—1901 East 51st Street and 3109 North IH 35 in Austin. There is no support for Linklater's contention that we may only look at one "declarations" page and ignore others. The "Texas Common Policy Declarations" page is the cover page for the entire policy, which includes not only commercial property coverage, but also commercial general liability and automobile coverage, whereas the "Supplemental Declarations" page and the "Commercial Property Renewal Certificate" are specific to the policy's commercial property coverage, which is what would cover business personal property. It is nonsensical to ignore the declarations specific to the policy being construed when attempting to discern what property that policy covers.[5]

---

[4] Although Linklater asserts that the policy has no geographic restriction and therefore the archive that was located at 171 Cardinal Drive is covered, he does not contend in this appeal that the building that was at that location is also covered.

[5] We also observe that if we were limited to considering only the "Texas Common Policy Declarations" page, as Linklater urges, the archive would not be covered under the commercial personal property policy for a different reason. That policy defines "covered property" as "the type of property described in this Section, **A.1.** . . . *if a Limit of Insurance is shown in the Declarations for that type of property*." (Emphasis added). The "Texas Common Policy Declarations" page has no stated limits of insurance for any type of property. Limits of Insurance are shown only on the Renewal Certificate and the Supplemental Declarations pages.

The cases Linklater cites do not compel the conclusion that, by leaving the "Location of Premises" portion of the "Texas Common Policy Declarations" page blank, TIE has waived any geographic restriction. In *Chiles v. Aetna Casualty & Surety Co.*, the court considered a claim for coverage for personal property lost in a fire under a broad-form tenant attachment to a homeowner's policy insuring personal property for a term of three years. 589 S.W.2d 723, 724 (Tex. Civ. App.—Texarkana 1979, no writ). The policy provided that it covered only property at the premises designated as the "Described Dwelling." The space for identifying the "Described Dwelling" was left blank. At the time of the fire, the insured lived at a different address from the one at which she resided when the policy was issued. The insurer took the position that, because the personal property lost was not at the property the insured lived at when she took out the policy, the property was "off premises" and subject to a lower coverage limit. The court found that the policy was ambiguous because the failure to include a "Described Dwelling" "might well have been considered [by the insured] as a waiver of the premises restriction set forth in other portions of the policy." *Id.* This alternate interpretation of the three-year renter's insurance policy was a reasonable one because, as the court noted, "[i]t was foreseeable that the insured tenant was likely to move the insured personal property to another residence before the expiration of the policy." *Id.* The court concluded that the language of the policy supported an interpretation imposing liability on the insurer, which it adopted. *Id.*

The *Chiles* court did not hold that the insurer had waived any geographic limitation by omitting to enter an address in the "Described Premises" box in the policy. Rather, the court stated that the insured "might well have considered" it to be a waiver, and concluded that that was a reasonable alternate interpretation of the renter's insurance policy, rendering it ambiguous. In the

7

present case, the declarations pages associated with the commercial property policy do include descriptions of two specific premises; one on the "Commercial Property Renewal Certificate" and one on the "Supplemental Declarations." Linklater's interpretation that the failure to fill in the "Location of Premises" box on the "Common Policy Declarations" page means that the policy covers his business personal property located anywhere in the United States is not a reasonable one. Thus, the omission of a property description on the Common Policy Declarations page does not render the commercial property policy ambiguous. *See Page*, 315 S.W.3d at 527 (insurance contract ambiguous if susceptible of more than one reasonable interpretation).

Linklater also relies on *Indemnity Marine Assurance Co. v. Citizens National Bank of Cameron*, 463 S.W.2d 290, 292 (Tex. Civ. App.—Waco 1971, no writ). In that case, the insurer denied coverage for the loss of a cotton picker because it burned at a location more than 50 miles from the insured's home address in Hearne, Texas. The policy included the insured's name and address in Hearne. It defined "property covered" as the cotton picker "while at the premises hereinafter described or within 50 miles thereof: [left blank]." *Id.* at 292. The court held that the insurer's failure to fill in the portion of the policy purporting to limit coverage for the cotton picker to a particular geographic area constituted a "waiver to such geographical limitation clause." *Id.* Consequently, it rejected the insurer's argument that the cotton picker was only covered if located within 50 miles of the Hearne address. In the present case, the commercial property policy's Renewal Certificate and Supplemental Declarations identified the two specific locations covered by the policy. TIE did not fail to fill in a portion of the commercial property policy purporting to limit coverage. *Indemnity Marine* is distinguishable and does not compel the conclusion that TIE waived a geographical limitation to its coverage of Linklater's commercial property.

8

TIE did not waive any geographic limitation to the commercial personal property policy's coverage. The covered locations are described in the policy's Renewal Certificate and Supplemental Declarations. The policy is not ambiguous with regard to what locations are covered and the trial court did not erroneously interpret ambiguous provisions of an insurance policy in favor of the insurer. We overrule appellant's first three issues.

***Does the policy's "Coverage Extensions" provision provide coverage for the archive?***

In his fourth issue, Linklater contends that the trial erred in granting TIE's motion for summary judgment because the "Coverage Extensions" provision of the policy provides coverage for the archive despite the fact that it was not located at either 1901 East 51st Street or 3109 North IH 35. The commercial property insurance policy, as modified by the endorsement, includes the following provision:

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the premises.

If a Coinsurance percentage of 80% or more or, a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired or Constructed Property**

**(1) Buildings**

You may extend the insurance that applies to **Covered Property** to apply to:

9

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

   **(i)** Similar use as the building described in the declarations; or

   **(ii)** Use as a warehouse.

The most we will pay for loss or damage caused by a Coverage Cause of Loss in any one occurrence under this **Coverage Extension** is $1,000,000.

**(2) Your Business Personal Property**

**(a)** If this policy covers **Your Business Personal Property** you may extend that insurance to apply to:

   **(i)** Business Personal Property at any location you acquire within the Coverage Territory other than at any fairs, trade shows or exhibitions;

   **(ii)** Business Personal Property at your newly constructed or acquired buildings at the location described in the Declarations; or

   **(iii)** Business Personal Property that you newly acquire located at the described premises.

The most we will pay for loss or damage caused by a Covered Cause of Loss in any one occurrence under this Extension is $250,000.

. . .

**(3) Period of Coverage**

Insurance under this Coverage Extension at each newly acquired or constructed property will end when any of the following occurs:

**(a)**    This policy expires;

**(b)**    60 days expires after you acquire or begin to construct the property; or

**(c)**    You report values to us.

We will charge you additional premium for values reported from the date you acquire the property, or construction begins on that part of the building that would qualify as covered property.

Linklater relies on section 5(a)(2)(a)(i), which provides that coverage can be extended to "business personal property at any location you acquire within the Coverage Territory."[6] Linklater contends that because he owned 171 Cardinal Drive during the policy period, section 5(a)(2)(a)(i) extends coverage to the archive located thereon. TIE maintains that section 5(a)(2)(a)(i) extends coverage to business personal property at locations Linklater acquires during the policy period, not those he already owns. We agree with TIE. Because Linklater did not acquire 171 Cardinal Drive during the policy period, but rather already owned it, the coverage extensions do not apply to the archive.

Linklater's interpretation of section 5(a)(2)(a)(i) ignores the active nature of the dynamic verb "acquire." "Acquire" means "to gain possession or control of something; to get or to obtain." Black's Law Dictionary 26 (9th ed. 2009). By contrast, "own" is a stative verb that means "to rightfully have or possess as property; to have a legal right to." *Id.* at 1214. The verb "acquire" represents an action—that of obtaining—whereas the verb "own" represents a state—that of possession. Section 5(a)(2)(a)(i) thus extends coverage to business personal property at locations Linklater acquires—i.e., gets or obtains—during the policy period. It does not extend coverage to

---

[6] The policy defines the "Coverage Territory" as the United States.

11

business personal property at all locations Linklater already owned when the policy period commenced. This interpretation is consistent with the fact that section 5(a)(2)(a)(i) is found in a provision entitled "Newly Acquired or Constructed Property." Moreover, construing section 5(a)(2)(a)(i) to mean that the policy covers Linklater's business personal property in any location he owns, rather than at locations he acquires during the policy period, would render the policy's geographic limitations on covered business personal property meaningless. *See Moayedi v. Interstate 35/Chisam Rd,, L.P.*, 438 S.W.3d 1, 7 (Tex. 2014) (court must consider entire contract in effort to harmonize and give effect to all its provisions so that none will be rendered meaningless).

Linklater emphasizes the fact that section 5(a)(2)(a)(i), which originally provided that the coverage extension applied to "[b]usiness personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions," was modified by the endorsement to omit the words "including such property that you newly acquire." Linklater attributes significance to the omission of the words "*newly acquire*," contending that the modification dropped the requirement that the business personal property be "newly acquired." Linklater reasons that this section, as modified, covers the archive even though he had not "newly acquired" it. But even as modified, section 5(a)(2)(a)(i) still includes the words "at any location you acquire." Although the modified provision may cover the archive despite its not having been "newly acquired" business personal property, it still had to be at a location that Linklater "acquires" during the policy period. The Coverage Extensions provisions of the commercial property policy do not extend coverage to Linklater's archive because it was not at a location that Linklater acquired during the policy period, but instead was at a location he already owned and that was not one of the premises covered by the policy. We overrule appellants' fourth issue.

12

**CONCLUSION**

Having overruled each of the appellants' four issues, we affirm the trial court's grant of summary judgment in favor of TIE.

_____

David Puryear, Justice

Before Chief Justice Rose, Justices Puryear and Goodwin

Affirmed

Filed:   June 18, 2015