

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00060-CV
_____

MVP FORT WORTH TAYLOR, LLC, Appellant

V.

JOHN ROY, Appellee

---

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CV21-1823

---

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

The parties dispute whether Appellant MVP Fort Worth Taylor, LLC was required to pay Appellee John Roy a commission under their real estate listing agreement (Listing Agreement). The trial court answered in the affirmative, granting traditional summary judgment for Roy on his breach of contract claim. Because Roy did not conclusively establish any grounds for summary judgment on that claim, we will reverse and remand.[1]

## I. Background

In 2020, the parties executed a Listing Agreement that gave Roy the "sole and exclusive right to sell" MVP's parking garage (the Property). MVP agreed to pay Roy a commission based on the Property's gross sales price if, before the Listing Agreement's expiration on July 1, 2021, one of the following commission-triggering events occurred:

> (a) Broker [i.e., Roy] individually or in cooperation with any other broker procure[d] a person or business entity ready, able[,] and willing to purchase the Property at . . . a purchase price agreed to by Seller [i.e., MVP];
>
> (b) Seller enter[ed] into an enforceable contract for the sale of the Property, or any legal or equitable interest in the Property, with any purchaser, without exclusion as to any purchaser, whether by or through the efforts of Broker or any other person, including Seller;

---

[1]In addition to breach of contract, Roy filed alternative claims for quantum meruit and money had and received. MVP moved for traditional summary judgment on those claims, and on appeal, Roy acknowledges that the trial court's final judgment implicitly entered judgment against him on his alternative claims. Roy did not file a notice of appeal, so we leave those portions of the judgment undisturbed. *See* Tex. R. App. P. 25.1(c) (stating that "[a] party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal").

(c) Seller contribute[d] or convey[ed] the Property to a partnership, limited liability company, joint venture[,] or other business entity; or

(d) If Seller [wa]s a corporation, limited liability company, partnership[,] or other business entity, and an interest in such corporation, partnership[,] or other business entity [wa]s transferred, whether by merger, purchase[,] or otherwise, in lieu of a sale of the Property.

Roy found an interested buyer—Noyack Medical Partners LLC—and he began facilitating its negotiations with MVP.  By December 2020, Noyack and MVP were exchanging redlined drafts of a letter of intent and purchase agreement for the Property.  Meanwhile, MVP's indirect parent companies were in the process of being partially acquired by a third party.

MVP's ownership structure was reminiscent of a babushka doll; it was wholly owned by MVP Real Estate Holdings, LLC (Parent Company), which was wholly owned by MVP Merger Sub, LLC (Grandparent Company), which was wholly owned by MVP REIT II Operating Partnership, LP (Great-Grandparent Company), which was wholly owned by The Parking REIT, Inc (Great-Great-Grandparent Company).  An unrelated entity, Color Up, LLC, was in discussions with Great-Great-Grandparent Company and Great-Grandparent Company to acquire shares of stock in the former and interests in the latter.  On January 8, 2021, Color Up, Great-Great-Grandparent Company, and Great-Grandparent Company entered into a Preliminary Acquisition Agreement regarding the anticipated terms of the acquisition.

That same day, Roy emailed MVP another round of redlined sale documents from Noyack. In the documents, Noyack proposed several new provisions, including a term that conditioned closing on Noyack's ability to secure financing on terms it deemed acceptable.[2] The redlined documents also contained notes from Noyack indicating that some of the "[e]xhibits [we]re still under review." MVP stated that the documents had come "a day late" because Great-Great-Grandparent Company had "agreed with [Color Up] not to sell any real estate assets while . . . under contract." Rather than continuing to negotiate with Noyack, MVP asked Roy to "pull [the Property's] listing until further notice."

The Listing Agreement expired on July 1, 2021, with the Property still titled in MVP's name. The following month, Color Up's acquisition transaction closed. Upon signing a Final Acquisition Agreement, Color Up acquired stock in Great-Great-Grandparent Company and interests in Great-Grandparent Company. The Property, though, remained in MVP's name.

Roy sued for breach of contract (along with alternative claims not relevant to this appeal), and he moved for traditional summary judgment on that contract claim. He argued that MVP had anticipatorily breached the Listing Agreement by prematurely

_____

[2]Other newly proposed terms included a requirement that MVP transfer certain personal property to Noyack, a provision giving Noyack time to cure any default prior to MVP retaining its deposit, numerous additional paragraphs of seller warranties from MVP, and a provision allowing Noyack to hold back certain funds at closing as temporary security for MVP's warranties.

terminating his exclusive right to sell the Property and that MVP had further breached by failing to pay his commission when multiple commission-triggering events had occurred. MVP, meanwhile, filed a motion for traditional summary judgment of its own, arguing that each commission-triggering event had been conclusively disproven and that Roy should take nothing. The trial court denied MVP's motion, granted Roy's motion without specifying a basis for its judgment, and awarded Roy attorney's fees.

MVP appeals, challenging the merits of the summary judgment.

## II. Standard of Review

We review a summary judgment de novo. *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022); *City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 258–59 (Tex. 2018); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Fontana Evolution, LLC v. SCP Distribs., LLC*, No. 02-22-00211-CV, 2023 WL 308176, at *3 (Tex. App.—Fort Worth Jan. 19, 2023, no pet.) (mem. op.). A party moving for traditional summary judgment must conclusively establish that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(a), (b), (c); *Energen Res. Corp.*, 642 S.W.3d at 509; *City of Richardson*, 539 S.W.3d at 258–59; *Mann Frankfort Stein & Lipp Advisors*, 289 S.W.3d at 848. Unless it carries this burden, the non-movant has no obligation to even respond. *Energen Res. Corp.*, 642 S.W.3d at 509.

When, as here, the trial court does not specify a basis for its summary judgment, we must affirm if any basis presented to the trial court has merit. *Fontana Evolution*, 2023 WL 308176, at *3.

### III. Roy's Grounds for Summary Judgment

In its dispositive appellate issue, MVP argues that Roy's summary judgment motion did not conclusively establish his right to judgment on his breach of contract claim.[3] Roy's motion sought summary judgment on three grounds: that MVP had anticipatorily repudiated the Listing Agreement and that two commission-triggering events had occurred.

### A. Roy did not conclusively establish anticipatory repudiation.

Roy first argued that he was entitled to judgment as a matter of law because MVP had anticipatorily repudiated the Listing Agreement.

A party repudiates a contract if, by its words or actions, it indicates its "fixed intention" not to perform in the future. *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 738 (Tex. App.—Fort Worth 2008, pet. dism'd). Roy claims that MVP conveyed its intention not to perform the Listing Agreement by directing him to pull the listing and thereby "revoking [his] sole and exclusive right to sell the Property." He argues that the Listing Agreement did not allow MVP to prematurely terminate his

---

[3]MVP also argues that the trial court erred by failing to grant it summary judgment against Roy on Roy's alternative claims for quantum meruit and money had and received. But as we have already noted, the trial court's judgment implicitly rejected those claims. *See supra* note 1.

authority to sell the Property and that, under *Hancock v. Stacy*, 125 S.W. 884 (Tex. 1910), a seller repudiates a brokerage agreement by terminating the broker's authority to sell.[4]

But in *Hancock*, the seller did not simply terminate the broker's authority; he terminated the broker's authority and then sold the property to a buyer whom the broker had procured. 125 S.W. at 886–88. Roy neither alleged nor offered evidence that anything of the kind happened here. There was no evidence that MVP, after asking Roy to pull the listing, went around Roy to sell the Property to Noyack (or another buyer procured by Roy), much less that it did so during the term of the Listing Agreement.

Rather, the evidence showed merely that MVP directed Roy to pull the Property listing. Pulling the listing did not, in and of itself, deprive Roy of the exclusive right to sell the Property. And the exclusive right to sell the Property did not equate to a guarantee that a sale would occur. In fact, the Listing Agreement itself contemplated that Roy could sell the Property only for a "a purchase price agreed to by [MVP]." By pulling the listing, MVP was effectively communicating that it would not agree to any purchase price—or at least, it would not agree to any purchase price that it could

---

[4]If, as Roy contends, the Listing Agreement required MVP to keep the Property on the market and to actively pursue a sale throughout the Listing Agreement's term, then MVP breached the Listing Agreement by pulling the Property from the market; it did not merely anticipatorily repudiate. *Hancock* similarly involved a claim for breach of contract rather than a claim for anticipatory repudiation. *See Hancock*, 125 S.W. at 887 (noting that jury's finding showed that defendant "violated the contract between them").

realistically envision receiving. This was its prerogative under the terms of the Listing Agreement; nothing in the Listing Agreement required MVP to accept a specific price or specific terms. And for the same reason, nothing required MVP to keep the Property on the market.

Roy therefore failed to conclusively establish MVP's alleged anticipatory repudiation of the Listing Agreement, and the trial court could not have granted traditional summary judgment on this basis.

**B.     Roy did not conclusively establish a commission-triggering event.**

Roy also claimed that he was entitled to traditional summary judgment because (1) he had procured a buyer—Noyack—that was "ready, able and willing to purchase the Property at . . . a purchase price agreed to by [MVP]"; and (2) the Color Up acquisition transaction amounted to MVP having transferred "an interest in [MVP] . . . in lieu of a sale of the Property." He did not conclusively establish either of these commission-triggering events.

**a.     Roy did not conclusively establish that he had procured a buyer ready, able, and willing to purchase the Property at MVP's price.**

First, Roy claimed that he was entitled to summary judgment because Noyack was a "ready, able[,] and willing" buyer and Roy's procurement of such a buyer triggered his right to a commission under the Listing Agreement. In the trial court, Roy supported this contention with a single case: *Walters v. Thomas*, 535 S.W.2d 903 (Tex. App.—Fort Worth 1976, no writ), which Roy quoted for the rule that Texas law "will

8

not permit the owner to deny to the broker his right to recover a commission where the broker himself has fully complied as far as possible, and where his only dereliction is produced entirely through the fault of the owner himself." *Id.* at 905–06. But *Walters* involved a seller's wrongful withdrawal from a real estate sale following his execution of a binding sales contract with the buyer. *See id.* Roy offered no evidence that MVP and Noyack entered into any comparable, binding sales contract here.

Regardless, Roy's appellate argument shifts from relying on *Walters* to relying on the procuring-cause doctrine. *See, e.g.*, *Perthuis v. Baylor Miraca Genetics Labs., LLC*, 645 S.W.3d 228, 231, 234 (Tex. 2022). This too is inapplicable. The procuring-cause doctrine provides that, if a seller uses the broker's services to identify a buyer only to cut out the broker and sell directly to the buyer in the end, as "a rule of fairness and right," the broker is entitled to recover his commission for the buyer he procured. *See id.* at 234–35. This is reminiscent of *Hancock*—the case Roy attempted to rely upon to support his anticipatory repudiation theory. *See Hancock*, 125 S.W. at 886–88 (noting jury finding that plaintiff was "the procuring cause" that induced buyer to purchase property and enabled defendant to make sale). And as we observed in discussing that theory, Roy offered no evidence that MVP ever sold the Property to Noyack or any other buyer whom Roy had procured.

To the contrary, the summary judgment evidence showed that MVP and Noyack never reached an agreement regarding the terms of sale. Even Roy concedes that, when MVP pulled its listing, Noyack had just extended an updated offer that "was contingent

9

upon obtaining financing." Although Roy argues that "all indications [we]re that Noyack could have [obtained financing]," he does not point to any evidence to support this representation, and he did not offer any in the trial court.

More to the point, even if Noyack had been able to obtain financing, MVP was under no obligation to accept the financing contingency. Again, the Listing Agreement entitled Roy to a commission if he "procure[d] a [buyer] ready, able and willing to purchase the Property" but only "at . . . a purchase price agreed to by [MVP]." Although Roy insists that MVP had already agreed to a purchase price, MVP had the discretion to increase or decrease its "agreed" purchase price based on the other terms of sale. It was not obligated to accept the same purchase price from a buyer who conditioned the transaction on financing as it might have accepted from a buyer who paid cash.

Roy thus failed to conclusively establish that he had "procure[d] a [buyer] ready, able[,] and willing to purchase the Property at . . . a purchase price agreed to by [MVP]." The trial court could not have granted traditional summary judgment on this basis.

**b. Roy did not conclusively establish that the Color Up acquisition transferred an interest in MVP in lieu of a sale of the Property.**

In Roy's final ground for summary judgment, he asserted that he was entitled to a commission because the Color Up acquisition had transferred "an interest in

[MVP] . . . in lieu of a sale of the Property."[5]  The trial court could not have granted summary judgment on this basis either, though, because in advancing it, Roy muddied two key distinctions:  the distinction between the Preliminary and Final Acquisition Agreements, and the distinction between an interest in MVP and an interest in the Property.  Such muddying certainly served Roy's interests, but it was inaccurate as a matter of law.

---

[5]Roy's summary judgment motion lumped this commission-triggering event together with two others.  He broadly asserted that the Color Up acquisition transaction amounted to MVP having either "enter[ed] into an enforceable contract for the sale of the Property," "contribut[ed] or convey[ed] the Property to a . . . business entity," or transferred "an interest in [MVP] . . . in lieu of a sale of the Property."  MVP thus challenges all three of these commission-triggering events on appeal.

In truth, though, the substance of Roy's motion did not actually address the first of these triggers or identify an enforceable contract entered into by MVP.  *See McConnell v. Southside ISD*, 858 S.W.2d 337, 339–41 (Tex. 1993) (discussing cases in which summary judgment motion was inadequate to present ground for judgment); *cf. Burns v. Schobel*, No. 03-21-00521-CV, 2022 WL 3638215, at *3 (Tex. App.—Austin Aug. 23, 2022, no pet.) (mem. op.) (concluding that non-movant's "[m]ere reference to [certain] summary[ ]judgment evidence was insufficient" to present issue and avoid summary judgment on that basis).  And to the extent that Roy sought summary judgment based on MVP having "contribut[ed] or convey[ed] the Property" as part of the Color Up acquisition, he failed to conclusively establish that ground because, as discussed below, Roy's motion relied on the changes accomplished through the Final Acquisition Agreement, which came after the Listing Agreement's term had expired.

Regardless, on appeal, Roy does not attempt to support the summary judgment based on MVP having either "enter[ed] into an enforceable contract for the sale of the Property" or "contribut[ed] or convey[ed] the Property to a . . . business entity."  He argues only that the Color Up acquisition transferred "an interest in [MVP] . . . in lieu of a sale of the Property."

First, Roy sought to rely on the timing of the Preliminary Acquisition Agreement while relying on the substance of the Final Acquisition Agreement. He broadly asserted that the Color Up acquisition had transferred "control of [Great-Great-Grandparent Company,] and therefore the Property," that Color Up "now has the right . . . to use or dispose of the Property as it sees fit," and that Color Up "benefits from having the Property as one of its most valuable assets." Although Roy claimed that these changes occurred while the Listing Agreement was still in effect—pointing to the January 2021 Preliminary Acquisition Agreement—Roy's summary judgment evidence showed that the Preliminary Acquisition Agreement was just that: preliminary. The Preliminary Acquisition Agreement arguably contemplated the changes Roy described, but there was no evidence that they were consummated prior to the execution of the Final Acquisition Agreement, which occurred more than a month after the Listing Agreement's term had expired.

Plus, even if such timing issues could be set aside, Roy's summary judgment motion did not distinguish between an interest in MVP and an interest in the Property. The Listing Agreement required transfer of "an interest in [MVP]" to trigger Roy's commission, and Roy argued that the Color Up acquisition transferred "a legal and equitable interest in the Property." The trial court could not have granted traditional summary judgment based on an alleged transfer of an interest in the Property as opposed to an interest in MVP, just as it could not have granted traditional summary

12

judgment based on an alleged transfer accomplished by the Final Acquisition Agreement.

These flaws may explain why Roy modifies his argument on appeal. Now, he contends that the Preliminary Acquisition Agreement transferred an equitable interest in MVP by giving Color Up authority over the Property's sale. According to Roy, when MVP's parent company's parent company's parent company's parent company agreed to temporarily pause its subsidiaries' real estate transfers, that amounted to transferring an equitable ownership interest in its subsidiaries, and such transfer was performed in lieu of a sale of the specific parking-garage Property at issue here.

This argument is a stretch, but more to the point, it was not presented in Roy's motion for traditional summary judgment.[6] *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) ("Summary judgment may not be affirmed on appeal on a ground not presented to the trial court in the motion."). And because it was not, Roy did not explain how—much less offer conclusive evidence showing that—a temporary pause

---

[6]The closest Roy came to advancing his current position was in his response to MVP's summary judgment motion. There, Roy argued that because Color Up had "acquired shares of common stock in [Great-Great-Grandparent Company] and common units of limited partnership interest in [Great-Grandparent Company], . . . a controlling, beneficial, and economic interest in MVP . . . was transferred." Then, just a few lines later, he argued that the Final Acquisition Agreement's closing date in August 2021 was irrelevant because the Preliminary Acquisition Agreement was what transferred a controlling interest in MVP and the Property to Color Up.

in real estate sales was implemented as a substitute for—"in lieu of"—an actual sale of the Property.

Because Roy did not conclusively establish that the Preliminary Acquisition Agreement amounted to a transfer of an interest in MVP in lieu of a sale of the Property, the trial court could not have granted him traditional summary judgment on this basis. And because this was the final ground supporting the traditional summary judgment, we sustain MVP's challenge to that judgment.

## IV.  Render or Remand

The question remains, though, whether to render judgment for MVP or remand Roy's contract claim to the trial court.

Generally, when both parties file competing motions for final summary judgment, we review all questions presented and render the judgment that the trial court should have rendered. *City of Richardson*, 539 S.W.3d at 259; *Mann Frankfort Stein*, 289 S.W.3d at 848. And here, both parties moved for traditional summary judgment on Roy's breach of contract claim. MVP thus urges us to render judgment in its favor. But, like Roy, MVP did not carry its summary judgment burden. *See City of Richardson*, 539 S.W.3d at 259 (reiterating rule that, "[o]n cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law").

By seeking traditional summary judgment on the breach element of Roy's contract claim, MVP assumed the heavy burden of conclusively disproving each

14

commission-triggering event encompassed by Roy's pleadings. *See* Tex. R. Civ. P. 166a(c); *Kelsey-Seybold Clinic v. Maclay*, 466 S.W.2d 716, 720 (Tex. 1971) (concluding that defendant had "failed to discharge the heavy, and in a case of this character virtually impossible, burden of establishing as a matter of law at the summary judgment stage that it [wa]s not liable under any theory fairly presented by the allegations of the petition"), *superseded by statute on other grounds as recognized in Helena Labs. Corp. v. Snyder*, 886 S.W.2d 767, 768 (Tex. 1994); *cf. Draughon v. Johnson*, 631 S.W.3d 81, 87 (Tex. 2021) (explaining that "[t]he presumptions and burden of proof for an ordinary or conventional trial are immaterial to the burden that a movant for [traditional] summary judgment must bear"). This required MVP not only to produce summary judgment evidence but also to prepare a motion that "expressly set out" why MVP was entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c) (authorizing summary judgment if moving party shows it "is entitled to judgment as a matter of law on the issues expressly set out in the motion"). Yet, MVP's summary judgment motion gave only cursory inspection to some of the commission-triggering events, often leaving the trial court on its own to sift through MVP's voluminous exhibits in search of supportive evidence.

Just one example suffices, as just one neglected commission-triggering event was sufficient to undermine MVP's entitlement to judgment as a matter of law. MVP committed a mere three sentences to its contention that it had not "contributed or conveyed the Property." Citing to an appraisal-district record of the Property—and

15

nothing else—MVP asserted that "[t]he Property remain[ed] titled in the name of [MVP]" and "was not contributed or conveyed to another business entity as part of the [Color Up acquisition]." It did not distinguish between "contribut[ing]" and "convey[ing]," it did not elaborate on its contention that the Color Up acquisition had not qualified as either, it did not identify the boundaries of the Preliminary Acquisition Agreement's effect on the Property, and it did not address whether the Property had been (or even could have been) "contribut[ed]" to another entity without title changing hands.

In short, MVP assumed a weighty burden—the burden of conclusively disproving an element of Roy's claim—and its motion for traditional summary judgment failed to carry that burden. Therefore, it was not entitled to traditional summary judgment on Roy's breach of contract claim.

## V. Conclusion

Because Roy did not conclusively establish grounds for traditional summary judgment on his breach of contract claim, the trial court erred by granting it. We reverse the portions of the final judgment granting Roy relief on his contract claim, including the corresponding award of attorney's fees.[7] The case is remanded for further proceedings consistent with this opinion. *See* Tex. R. App. P. 43.2(d).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: July 25, 2024

---

[7]The trial court's implicit judgment dismissing Roy's alternative claims for quantum meruit and money had and received remains unchanged. *See supra* note 1.